IN THE UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF DELAWARE

Nathan L. Guinn
_____
     V. Plaintiff

                                    *
                                    *                          0 6 -      3
                                    *
Warden Thomas A. Carroll            *
_____                     *
        Defendant(s)                *
                                    *
                                    *

FILED

JAN - 3 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Appendix of Memorandum of Law in Support of Petition
Under 28 U.S.C § 2254 For Writ of Habeas Corpus by a
Person in State custody

# TABLE OF CONTENTS

A-1   A-1 Certified Copy of Docket Entries
        Superior Court - State v. Nathan L. Guinn

A-5  Indictment - State v. Nathan L. Guinn


State's Witnesses:

Paul Kuntzi :
  Direct Examination          A-7 through A-9
  Cross Examination           A-10

Douglas Watts:
  Direct Examination          A-11 through A-19
  Cross Examination           A-20 through A-23
  Redirect Examination        A-24 through A-25

Paul Kuntzi:
  Cross Examination           A-38 through A-40


Court Proceedings:
  Argument on Motion to Suppress :   A-26 through A-29
  Decision on Motion to Suppress:    A-30 through A-37


Misc., Evidence:                     A-41 through A-49
  Sentencing Order                   A-50 through A-56
                                     A-57 through 84
  Delaware Supreme Court's Motion to Affirm

```
                       SUPERIOR COURT CRIMINAL DOCKET            Page     1
                          ( as of  09/02/2003 )
```

State of Delaware v.  NATHAN L GUINN                        DOB: 09/30/1980
  State's Atty: DENNIS KELLEHER , Esq.          AKA:
  Defense Atty: SANDRA W DEAN , Esq.


Assigned Judge:

Charges:

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0207018218 | IK02080082 | PWITD NSII CS | TG | 05/13/2003 |
| 002 | 0207018218 | IK02080083 | DEL 300' PARK | TG | 05/13/2003 |
| 003 | 0207018218 | IK02080084 | POSS,USE,CONS.N | NOLP | 05/12/2003 |
| 004 | 0207018218 | IK02080085 | POSS DRUG PARAP | TG | 05/13/2003 |

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 1 | 08/05/2002 | CASE ACCEPTED IN SUPERIOR COURT. ARREST DATE: 07/27/2002 PRELIMINARY HEARING DATE:8/2/02 BAIL:  SECURED BAIL-HELD        7,000.00 | |
| 2 | 08/08/2002 | LETTER FROM ROBERT HARPSTER TO DENNIS KELLEHER RE:DEFENDANT'S DEMAND FOR ALL PERSONS INVOLVED IN THE CHAIN OF CUSTODY OF ANY EVIDENCE TO BE PRESENTED IN COURT. | |
| 3 | 08/09/2002 | NOTICE OF SERVICE - DISCOVERY RESPONSE. | |
| 4 | 08/28/2002 | TRANSCRIPT OF PRELIMINARY HEARING FILED. (L. LAVENDER) | |
| 5 | 09/03/2002 | INDICTMENT, TRUE BILL FILED. | |
| 6 | 09/04/2002 | SUMMONS MAILED TO DEFENDANT AND BONDSPERSON FOR APPEARANCE IN COURT ON 9/12/02 FOR ARRAIGNMENT. | |
| 7 | 09/12/2002 | ARRAIGNMENT CALENDAR - 10-B BY VIDEO - DEFENDANT WAIVED READING, PLEAD NOT GUILTY, JURY TRIAL DEMANDED | FREUD ANDREA MAYBEE |
| 8 | 09/24/2002 | CASE REVIEW CALENDAR:  SET FOR FINAL CASE REVIEW 10/30/02; TRIAL 11/04/02. | WITHAM WILLIAM L. JR. |
| 9 | 11/12/2002 | FAST TRACK CALENDAR:  NEW TRACK ASSIGNED. NEW TRACK: DATE: 12/11/02 CASE REVIEW, 12/17/02 TRIAL | WITHAM WILLIAM L. JR. |
| 10 | 11/22/2002 | MOTION FOR A BILL OF PARTICULARS FILED. (R. HARPSTER) | |

A-1

SUPERIOR COURT CRIMINAL DOCKET                    Page    2
( as of  09/02/2003 )

State of Delaware v.  NATHAN L GUINN                    DOB: 09/30/1980
State's Atty: DENNIS KELLEHER , Esq.        AKA:
Defense Atty: SANDRA W DEAN , Esq.

|     | Event |       |       |
| No. | Date  | Event | Judge |
|-----|-------|-------|-------|
| 11 | 12/06/2002 | | RIDGELY HENRY DUPONT |
|    |    | MOTION FOR A BILL OF PARTICULARS GRANTED. BILL OF PARTICULARS TO BE FILED BY THE STATE WITHIN 7 DAYS. | |
| 12 | 12/10/2002 | | |
|    |    | MOTION TO AMEND INDICTMENT FILED. | |
| 13 | 12/10/2002 | | |
|    |    | BILL OF PARTICULARS RESPONSE. (D. KELLEHER) | |
| 14 | 12/11/2002 | | RIDGELY HENRY DUPONT |
|    |    | FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL 12/17/02 | |
| 15 | 12/13/2002 | | RIDGELY HENRY DUPONT |
|    |    | MOTION TO AMEND INDICTMENT GRANTED. | |
| 16 | 12/16/2002 | | |
|    |    | MOTION FOR ADDITIONAL VOIR DIRE FILED. (R. HARPSTER) | |
| 17 | 12/16/2002 | | |
|    |    | SUBPOENA(S) ISSUED. | |
| 18 | 12/17/2002 | | VAUGHN JAMES T. JR. |
|    |    | TRIAL CALENDAR-CONTINUED TO 12/18/02. DEFENSE REQUEST. WITNESS/VICTIM UNAVAILABLE. | |
| 19 | 12/18/2002 | | RIDGELY HENRY DUPONT |
|    |    | TRIAL CALENDAR- WENT TO TRIAL JURY | |
|    | 12/19/2002 | | VAUGHN JAMES T. JR. |
|    |    | JURY TRIAL HELD 12/18, 12/19/02. THE DEFENSE REQUESTED A MISTRIAL AND IT WAS GRANTED BY JUDGE VAUGHN. NEW DATES WERE GIVEN.  FINAL CASE REVIEW 1/29/03 AND TRIAL 2/3/03.  S/D. KELLEHER  D/R. HARPSTER CR/V. CLINE  CC/B. HOLCOMB | |
| 21 | 12/20/2002 | | |
|    |    | MOTION IN LIMINE FILED BY DENNIS KELLEHER, ESQ. REQUESTING THAT THE STATEMENTS MADE BY SAMUEL INGRAM ARE EXCLUDED FROM TESTIMONY IN THE TRIAL ON NATHAN GUINN. | |
| 22 | 12/20/2002 | | RIDGELY HENRY DUPONT |
|    |    | MOTION IN LIMINE GRANTED BY PRESIDENT JUDGE RIDGELY. | |
| 23 | 01/08/2003 | | |
|    |    | EXCERPT TRANSCRIPT OF WITNESS TESTIMONY ONLY: WEDNESDAY, DECEMBER 18, 2002 VENDITA CLINE, C.S.R., R.P.R. OFFICIAL COURT REPORTER | |
| 24 | 01/08/2003 | | |
|    |    | EXCERPT TRANSCRIPT OF WITNESS TESTIMONY ONLY: THURSDAY, DECEMBER 19, 2002 VENDITA F. CLINE, C.S.R., R.P.R. OFFICIAL COURT REPORTER | |
| 25 | 01/10/2003 | | |

A-2

```
                  SUPERIOR COURT CRIMINAL DOCKET                Page    3
                     ( as of  09/02/2003 )
```

State of Delaware v.  NATHAN L GUINN                    DOB: 09/30/1980
State's Atty: DENNIS KELLEHER , Esq.          AKA:
Defense Atty: SANDRA W DEAN , Esq.

```
         Event
No.    Date           Event                        Judge
---------------------------------------------------------------------------
       SUBSTITUTION OF COUNSEL FILED.
       SANDRA DEAN FOR ROBERT HARPSTER
26   01/14/2003                              WITHAM WILLIAM L. JR.
       CONTINUANCE REQUEST FILED BY SANDRA DEAN, ESQ.; GRANTED BY JUDGE
       WITHAM; NEW ATTY; REAMIN ON FCR 1/29. ADDRESS TRIAL AT FCR.
27   01/23/2003
       LETTER FROM PARALEGAL OFFICE TO SANDRA DEAN, ESQUIRE
       RE: ATTACHED IS CORRESPNDENCE THE COURT RECEIVED FROM THE DEFENDANT.
28   01/29/2003                              WITHAM WILLIAM L. JR.
       CASE REVIEW CALENDAR FINAL CASE REVIEW CONTINUED.DEFENDANT'S
       REQUEST-CR-DEFENDANT NEEDS MORE TIME.
29   02/05/2003
       MOTION TO SUPPRESS FILED BY SANDRA W. DEAN, ESQ.
30   02/12/2003
       SUBPOENA(S) ISSUED.
31   02/26/2003                              VAUGHN JAMES T. JR.
       FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL 3/4/03.
32   03/04/2003                              RIDGELY HENRY DUPONT
       TRIAL CALENDAR-JURY TRIAL-CONTINUED
       COURT'S REQUEST-LACK OF JUDGES.
       FCR 4/2/03, T 4/8/03
33   03/05/2003
       SUBPOENA(S) ISSUED.
34   03/24/2003
       SUBPOENA(S) ISSUED.
35   04/02/2003                              RIDGELY HENRY DUPONT
       FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL 4/8/03
36   04/08/2003                              WITHAM WILLIAM L. JR.
       TRIAL CALENDAR-CONTINUED. DEFENSE REQUEST.DEFENSE ATTY. IN TRIAL.
37   04/16/2003
       SUBPOENA(S) ISSUED.
38   04/30/2003                              WITHAM WILLIAM L. JR.
       FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL
39   05/07/2003                              WITHAM WILLIAM L. JR.
       TRIAL CALENDAR- WENT TO TRIAL JURY SELECTION 5/12/03. TRIAL TO BEGIN
       ON 5/12/03.
40   05/07/2003                              WITHAM WILLIAM L. JR.
       SUPPRESSION HEARING:  RESERVED DECISION.
41   05/12/2003                              WITHAM WILLIAM L. JR.
       MOTION TO SUPPRESS DENIED.
42   05/13/2003                              WITHAM WILLIAM L. JR.
       JURY TRIAL HELD 5/12, 5/13/03. JURY FOUND THE DEFENDANT GUILTY OF ALL
```

A-3

SUPERIOR COURT CRIMINAL DOCKET                    Page    4
( as of  09/02/2003 )

State of Delaware v.  NATHAN L GUINN                      DOB: 09/30/1980
State's Atty: DENNIS KELLEHER , Esq.          AKA:
Defense Atty: SANDRA W DEAN , Esq.


       Event
No.   Date           Event                          Judge
-----------------------------------------------------------------------------
       CHARGES, IK02-08-0082 PWITD NSII CS, 0083 POSS. NSII CS W/I 300' OF A
       CHURCH, 0085 POSS. OF DRUG PARAP.  MOT. TO SUPRESS WAS DENIED ON
       5/12/03. BOND IS REVOKED. PSI IS ORDERED. SENTENCING DATE IS
       6/25/03 9:00 A.M.  S/D. KELLEHER  D/S. DEAN  CR/V. CLINE 5/12/03
       CR/S. DOUGHERTY 5/13/03  CC/B. HOLCOMB 5/12/03, 5/13/03  CC/M. RUDIS
       5/13/03 (VERDICT ONLY)
43    06/25/2003                            WITHAM WILLIAM L. JR.
       SENTENCING CALENDAR: DEFENDANT SENTENCED.
44    07/14/2003
       MOTION FOR REDUCTION OR MODIFICATION OF SENTENCE FILED (S. DEAN).
45    07/17/2003
       NOTICE OF APPEAL 350, 2003
46    07/17/2003
       DIRECTIONS TO COURT REPORTER FOR TRANSCRIPT.  TRANSCRIPT MUST BE
       FILED NO LATER THAN AUGUST 25, 2003.
47    07/18/2003
       NOLLE PROSEQUI FILED BY ATTORNEY GENERAL DENNIS KELLEHER,
       IK02-08-0084;
48    07/18/2003
       STATE'S RESPONSE TO MOTION FOR REDUCTION OF SENTENCE FILED
       (D. KELLEHER).
49    08/06/2003
       TRANSCRIPT OF SUPPRESSION HEARING FILED. (V. CLINE)
50    08/06/2003
       TRANSCRIPT OF TRIAL FILED. (5/12/03) (V. CLINE)
51    08/11/2003                            WITHAM WILLIAM L. JR.
       ORDER: NOW, THEREFORE, IT IS ORDERED THAT DECISION ON THE MOTION FOR
       REDUCTION OR MODIFICATION SENTENCE IS DEFERRED UNTIL THE RETURN OF THE
       RECORD AND MANDATE TO THIS COURT.
52    08/22/2003
       TRANSCRIPT OF TRIAL FILED. (VOL B) (S. DOUGHERTY)
53    08/22/2003
       TRANSCRIPT OF SENTENCING FILED. (S. DOUGHERTY)
54    08/28/2003
       LETTER FROM SUPREME COURT STATING RECORD IS DUE NO LATER THAN 9/2/03.

              *** END OF DOCKET LISTING AS OF  09/02/2003 ***
                  PRINTED BY: CSCRMAN


                              CERTIFIED
                              AS A TRUE COPY  9/2/03
                              ATTEST· LISA M. LOWMAN, PROTHONOTARY
                              BY: *Rebecca S. Manchester*

                          A4

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

THE STATE OF DELAWARE　　　　　:　ID NO 0207018218

　　　　　vs.　　　　　　　　　　:　INDICTMENT BY THE

NATHAN L. GUINN　　　　　　　　:　GRAND JURY

The Grand Jury charges NATHAN L. GUINN with the following offenses:

COUNT 1　　　　　　　　　　K02-08-0082

POSSESSION WITH INTENT TO DELIVER A NARCOTIC SCHEDULE II
CONTROLLED SUBSTANCE, a felony, in violation of Title 16, Section 4751 of the
Delaware Code of 1974, as amended.

NATHAN L. GUINN on or about the 27th day of July, 2002, in the County of Kent,
State of Delaware, did knowingly and unlawfully possess cocaine, a Narcotic Schedule
II Controlled Substance as classified under 16 Del. C. Section 4716(b)(4), with the
intent to deliver same.

COUNT 2　　　　　　　　　　K02-08-0083

POSSESSION OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE
WITHIN 300 FEET OF CHURCH, a felony, in violation of Title 16, Section 4768 of the
Delaware Code of 1974, as amended.

NATHAN L. GUINN on or about the 27th day of July, 2002, in the County of Kent,
State of Delaware, did knowingly and unlawfully possess a Narcotic Schedule II
Controlled Substance, cocaine, as classified under 16 Del. C. Section 4716(b)(4), within
300 feet of Holly Trinity Church.

A-5

4/RC

COUNT 3                                I K02-08-0084

POSSESSION OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE, a misdemeanor, in violation of Title 16, Section 4753 of the Delaware Code of 1974, as amended.

NATHAN L. GUINN on or about the 27th day of July, 2002, in the County of Kent, State of Delaware, did knowingly and unlawfully possess a Narcotic Schedule II Controlled Substance, cocaine, as classified under 16 Del. C. Section 4716(b)(4).

COUNT 4                                I K02-08-0085

POSSESSION OF DRUG PARAPHERNALIA, a misdemeanor, in violation of Title 16, Section 4771 of the Delaware Code of 1974, as amended.

NATHAN L. GUINN on or about the 27th day of July, 2002, in the County of Kent, State of Delaware, did knowingly and unlawfully possess with intent to use drug paraphernalia to ingest into the human body a controlled substance in violation of Chapter 47 Title 16 of the Delaware Code of 1974.

A TRUE BILL

_____
(FOREPERSON)

_____
Gwen M Senato
(SECRETARY)

_____
ATTORNEY GENERAL

_____
DEPUTY ATTORNEY GENERAL

A-6

IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | Criminal Action No. |
| | ) | 0207018218 |
| vs. | ) | |
| | ) | |
| | ) | |
| NATHAN L. GUINN, | ) | |
| Defendant. | ) | August 2, 2002 |

- - - - -

_R.H.H._

_AUG 2 8 2002_

BEFORE:

COMMISSIONER JOSEPH W. MAYBEE

- - - - -

_Delaware Rules of Evidence_
_901 (a)_

APPEARANCES:

JOHN R. GAREY, Esquire
Deputy Attorney General,
on behalf of the State,

PAUL S. SWIERZBINSKI, Esquire
Assistant Public Defender,
on behalf of the Defendant.

PRELIMINARY HEARING TRANSCRIPT

LINDA A. LAVENDER
Official Court Reporter



 A-7

## INDEX

| STATE'S EVIDENCE | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Paul D. Kuntzi............... | 3 | 5 | — | -- |

LINDA A. LAVENDER
Official Court Reporter

 A-8

1          A.      Yes, the Holy Trinity Church is located on the

2     southeast corner of South New and West Reed.

3          Q.      And, how far away was the defendant from that

4     location?

5          A.      The defendant actually walked right in front of the

6     church, on the sidewalk.

7          Q.      Did you question Guinn?

8          A.      Just asked him what he was doing out and what

9     was going on. I didn't interview him and read him his Miranda rights or anything like

10    that.

11         Q.      Did these offenses occur within the City of

12    Dover?

13         A.      Yes, sir.

14         Q.      Kent County?

15         A.      Yes.

16         MR. GAREY: No other questions, Your Honor.

17         THE COURT: Cross-examine.

18         MR. SWIERZBINSKI: Thank you, Your Honor.

19                    CROSS-EXAMINATION

20    BY MR. SWIERZBINSKI:

21         Q.      Sir, you indicated the money was in certain

22    denominations. Can you tell us how many hundreds there are?

23         A.      I recall that there was one $100 bill and the other

LINDA A. LAVENDER
Official Court Reporter
 A-9

1    delivering it in front of the church it's impermissible character evidence.  And, I've kind

2    of let him go because we are prelim but I mean, we can go on and on.  We can go all

3    day about how...

4                    THE COURT:  Why is it relevant?

5                    MR. SWIERZBINSKI:  I'll move on, Your Honor.

6                    THE COURT:  All right.  Let's roll.

7    BY MR. SWIERZBINSKI:

8              Q.         Did you speak to an individual named Ingram,

9    sir, concerning this matter?

10             A.         If that was the gentleman that was with him, I

11    spoke to another male that was with him, yes.

12             Q.         Perhaps his name is Stanley Ingram?

13             A.         It could be, I didn't document his name.

14             Q.         Okay.  You did speak to another person

15    concerning this matter, correct, sir?

16             A.         Yes, sir.

17             Q.         All right.  And, did you speak to him on the

18    street, at the police station or where?

19             A.         At the street, on the street, exactly where I

20    contacted Mr. Guinn.

21             Q.         All right.  And, what did this person say in terms

22    of ownership of these alleged controlled substances or whatever?

23                 MR. GAREY:  Objection.




```
1              IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

2                     IN AND FOR KENT COUNTY

3

4    STATE OF DELAWARE,        ) C.A. No. IK02-08-0082, et al.
                               )
5              vs.             )
                               )
6    NATHAN GUINN,             ) Appeal No. 350, 2003
     I.D. No. 0207018218,      )
7                              ) Suppression Motion:
               Defendant.      ) May 7, 2003
8

9                      *   *   *   *   *

10

11   BEFORE:   HON. WILLIAM L. WITHAM, JR., Judge,

12                      *   *   *   *   *

13

14   APPEARANCES:

15           DENNIS KELLEHER, ESQ.
             Deputy Attorney General
16           on behalf of the State of Delaware

17           SANDRA DEAN, ESQ.
             Assistant Public Defender
18           on behalf of the Defendant

19                     *   *   *   *   *

20           TRANSCRIPT OF SUPPRESSION HEARING
                 Wednesday, May 7, 2003
21

22           VENDITA F. CLINE, C.S.R., R.P.R.
                 Official Court Reporter
23
```

RECEIVED
AUG 0 6 2003
BY:

 A-11

2

INDEX TO TESTIMONY

STATE'S EVIDENCE

|  | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Douglas Watts | 6 | 13 | 18 | |

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

 A-12

1          Q.    How long have you been involved in the

2    Operation Safe Streets Program?

3          A.    I'm in my fifth year.

4          Q.    Okay.  So, you were working with Dover

5    Police in the Operation Safe Street Program on July

6    27th of last year?

7          A.    Yes, I was.

8          Q.    And who was your partner at that time with

9    Safe Streets?

10         A.    Patrolman First Class Paul Kuntzi.

11         Q.    Do you remember where you were on that

12   evening at around 10 o'clock?

13         A.    Yes.  We were traveling westbound on Reid

14   Street between Governors Avenue and New Street.

15         Q.    You were in a City of Dover Police car?

16         A.    We were in a police car, but it was an

17   unmarked police car.

18         Q.    Okay.  Do you remember who was driving?

19         A.    I believe I was, but I'm not -- I don't

20   really recall.

21         Q.    Now, at some point that evening or -- well,

22   can you -- did you encounter Mr. Guinn?

23         A.    Yes, we did.



```
 1          Q.   Where did you first see him?

 2          A.   I saw him walking northbound on New Street

 3  just south of Reid Street in front of the church.  I

 4  knew that Mr. Guinn had a capias out for him and he was

 5  also under Level 3 supervision and it was after 10

 6  p.m.

 7          Q.   So, he was in violation of his probation?

 8          A.   Yes, sir, he was.

 9          Q.   And what did you do once you saw Mr. Guinn

10  walking down the street?

11          A.   We exited the vehicle on the southeast

12  corner of Reid and New Street and took Mr. Guinn into

13  custody.

14          Q.   He was on the sidewalk when you approached

15  him?

16          A.   Yes.  He was on the east side of New Street

17  walking northbound.

18          Q.   Was he with anyone?

19          A.   Yes.  He was with another individual who I

20  don't recall his name.

21          Q.   Okay.  And it was just you and Officer

22  Kuntzi?

23          A.   Yes, sir.
```

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

 A-14

1   Q. Okay.  Who did what as you approached

2 Mr. Guinn and his companion?

3   A. PFC Kuntzi took Mr. Guinn into custody and

4 I stood by, pretty much for security, with the other

5 individual standing closeby.  I kind of was bladed

6 [sic] to Mr. Guinn facing the other individual.

7   Q. When Kuntzi took him into custody, does

8 that mean he put him in handcuffs?

9   A. He put him in handcuffs, yes.

10   Q. And you were paying attention to the other

11 person while he was doing this?

12   A. Correct.  I had my back almost to the

13 defendant and Officer Kuntzi.

14   Q. What did Officer Kuntzi do once he took the

15 defendant into custody?

16   A. He began searching the individual.

17   Q. Did you look over as he was doing this?

18   A. Yes, I could see what he was doing.

19   Q. How was the search conducted?

20   A. It was a normal search incident to arrest.

21 He was going in his pockets and locating items.

22   Q. Okay.  What did he locate on his person?

23   A. I'm not sure which pocket he located which

 A-15

1   item in, but I know he located an amount of U.S.

2   currency and then a -- about 2.7 grams of crack cocaine

3   or what, at the time, was suspected to be crack

4   cocaine.

5       Q.   Do you remember how much money it was?

6       A.   No, I do not.

7       Q.   And to the best of your recollection, were

8   both the money and the drugs found in his pants?

9       A.   I believe so, yes.

10      Q.   Did you hear Officer Kuntzi say anything to

11  the defendant as he was searching him?

12      A.   No, I believe we just told him why we were

13  taking him into custody.

14      Q.   And the best you can remember, do you --

15  what did you say, you're under arrest?

16      A.   I told him he was under arrest, there was a

17  capias for him and he was in violation of his curfew.

18      Q.   Did you say anything to the defendant

19  personally as the search was being conducted?

20      A.   Not that I recall, no.

21      Q.   Was the defendant saying anything?

22      A.   Yes.  He made a few statements to Officer

23  Kuntzi.

1          Q.    Do you remember what the defendant said?

2          A.    I remember hearing him say that the money

3     had belonged to his girlfriend, and I believe that to

4     be at the time Officer Kuntzi retrieved the money.

5          Q.    Officer Kuntzi takes the money out of his

6     pocket?

7          A.    Yes.

8          Q.    Did he ask him where the money came from?

9          A.    Not that I recall, no.

10         Q.    But he said the money was his girlfriend's?

11         A.    Yes.

12         Q.    Do you remember if he said anything about

13    who the crack belonged to?

14         A.    I just remember him saying they were

15    somebody else's pants.

16         Q.    Okay.  Do you know what Officer Kuntzi was

17    doing when he made that statement, the pants are

18    somebody else's?

19         A.    It was at that time that he had located the

20    crack.

21         Q.    Okay.  Was he waving the crack around in

22    the defendant's face?

23         A.    No, he -- he kind of showed it to me

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

A-17

1    because it was an odd-looking piece of crack cocaine in

2    relation to the others that I've seen.

3            Q.    What was odd about the crack?

4            A.    It was colored black and it had white edges

5    on it which appeared to be camouflaged.

6            Q.    But he didn't hold it out to the defendant

7    or anything?

8            A.    No.

9            Q.    And did you say anything to Officer Kuntzi?

10            A.    I told him -- at first, I was not doubtful,

11    but I felt the crack and scraped my fingernail on it to

12    see if it had the same consistency as normal crack

13    cocaine, which is waxy, and it did, so I told him I

14    believed it could be crack also.

15            Q.    And that was just a conversation between

16    you and Officer Kuntzi?

17            A.    Yes.

18            Q.    And that conversation was prompted because

19    of the unusual nature of the substance itself?

20            A.    Correct.

21            Q.    Okay.  Did anyone -- did you at any time

22    say anything to the defendant about the unusual nature

23    of the cocaine?

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

 A-18

1      A.    Not that I recall, no.

2      Q.    Did you ask him any questions about who it

3  belonged to?

4      A.    No.

5      Q.    Did Officer Kuntzi?

6      A.    No.

7      Q.    And he had said something about the pants

8  not belonging to him?

9      A.    Yes.

10      Q.    Okay.  Did anybody ask him who the pants

11  belonged to?

12      A.    I don't recall, no.

13      Q.    Was the defendant ever questioned?

14      A.    No, sir, he was not.

15      Q.    Okay.

16            MR. KELLEHER:  No further questions, your

17  Honor.

18            THE COURT:  Your witness, Ms. Dean.

19  CROSS-EXAMINATION BY MS. DEAN:

20      Q.    Good afternoon, officer.

21      A.    Good afternoon, ma'am.

22      Q.    Officer, when you approached -- when you

23  and Officer Kuntzi approached Mr. Guinn, was he

1  handcuffed immediately?

2       A.    Yes, ma'am.

3       Q.    All right.  Who did the handcuffing, you or

4  Officer Kuntzi?

5       A.    I believe it was Officer Kuntzi.

6       Q.    Was he -- where was he standing?  Did you

7  put him up against your car?  Was he still on the

8  sidewalk?  Where was he standing?

9       A.    He was off to the front of the driver's

10 side of the vehicle right next to the curb pretty much

11 on the southeast corner of Reid and New Street facing

12 in towards the building or the church, which is right

13 there.

14      Q.    With his back to the car?

15      A.    His back would be to the street side of New

16 Street.  The car would have been to his left.

17      Q.    Okay.  All right.

18            Now, you said that Officer Kuntzi searched

19 him.  Was it a pat-down or did he reach into his

20 pockets?  How did he conduct the search?

21      A.    Because of the fact that the subject was

22 wanted on a capias and he was in violation of his

23 curfew, it was a search incident to arrest and he went

 1   into his pockets.

 2        Q.    Okay.  Pants pocket, jacket, shirt?

 3        A.    Yes, ma'am.

 4        Q.    What pockets?

 5        A.    I believe -- I don't believe he had a

 6   jacket, but I can't recall.  I know he went in his pant

 7   pockets.

 8        Q.    Now, you testified that Officer Kuntzi told

 9   him why he was taken into custody.

10        A.    I told him upon exiting the vehicle that he

11   was in violation of curfew.  I'd done curfew checks

12   there prior.  Mr. Guinn knew me and I was -- I was

13   familiar with Mr. Guinn.  I told him he was in

14   violation of his curfew and that there was a capias,

15   and that was the only statement I made.

16        Q.    Okay.  You told him he was in Violation of

17   Probation because it was after -- did you say it was or

18   was not after 10 p.m.?

19        A.    It was after 10 p.m., yes.

20        Q.    At the time that you first saw him --

21        A.    Yes.

22        Q.    -- it was after 10?  Okay.

23              You told him that, and then what did Kuntzi

1  tell him?

2        A.    I don't recall him telling him anything,

3  just placed the subject into custody.

4        Q.    Okay.  So, I think -- did you just tell --

5  in response to Mr. Kelleher's question, did you say

6  that Officer Kuntzi told him why he was taken into

7  custody?

8        A.    No, I said I instructed him as to why we

9  were taking him into custody.

10        Q.    Okay.  Now, you said that after Kuntzi

11  found the substance in his pocket, he came over to you

12  and showed it to you.

13        A.    I was standing right next to them.

14        Q.    So, you were right there?

15        A.    I was right there, but I was -- as they

16  were facing the building, the corner, I was standing

17  beside them facing it also because that's where the

18  other subject was standing, so I was within two feet of

19  Officer Kuntzi and Mr. Guinn.

20        Q.    Officer Kuntzi showed you the substance

21  because it looked a little unusual?

22        A.    He asked me if I thought it was -- I

23  believe -- I'm not sure if he asked me if I thought it



1  was crack or he showed it to me and I scraped it with

2  my fingernail and told him I thought it might be crack

3  cocaine.

4      Q.   It was unusual?

5      A.   It was unusual compared to other crack that

6  I've seen, yes.

7      Q.   Okay.  Was it in a bag or loose?

8      A.   It was a loose rock.

9      Q.   Okay.

10     A.   That, I recall.

11     Q.   Okay.  Now, was Mr. Guinn standing right

12  there?

13     A.   Yes.

14     Q.   While Officer Kuntzi showed you the

15  cocaine, Mr. Guinn was right there?

16     A.   Yes, he was.

17     Q.   So, he could see what was happening?

18     A.   Yes.

19     Q.   Okay.  And did you make some response to

20  Kuntzi like you think it could be crack cocaine?

21     A.   Yes, I did.

22     Q.   All right.  And did he say anything after

23  that?

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

A-23

Watts - redirect                                                        18

1              A.    No, I believe we placed it in a small

2      envelope or he placed it in his pocket to hold onto it.

3              Q.    Okay.

4                    MS. DEAN:  No other questions, your Honor.

5                    THE COURT:  Any additional follow-up?

6                    MR. KELLEHER:  Just briefly, your Honor.

7      REDIRECT EXAMINATION BY MR. KELLEHER:

8              Q.    Officer, if you remember, did this

9      conversation between -- well, let me go back to your

10     prior testimony.

11                   You testified that when Officer Kuntzi took

12     the money out of the defendant's pockets, that's when

13     he said that belongs to my girlfriend?

14             A.    Yes.

15             Q.    And that when he took the crack cocaine --

16     suspected crack cocaine out of his pockets, he said the

17     pants are somebody else's?

18             A.    That's correct.

19             Q.    So, this conversation between yourself and

20     Officer Kuntzi about whether this was or was not crack

21     cocaine happened after he said the pants are not mine?

22             A.    I don't recall whether it was before or

23     after.

1          Q.   Okay.

2          A.   And then it was after that that he then

3     changed where the money had come from also.

4          Q.   Okay.  And the -- what was the second

5     statement about who the money belonged to?

6          A.   That was after the pants were somebody

7     else's, he then told us the money belonged to the other

8     individual and asked if we could give it to him.

9               MR. KELLEHER:  No further questions, your

10    Honor.

11              MS. DEAN:  I have no other questions, your

12    Honor.

13              THE COURT:  All right.  You may step down,

14    officer.

15              THE WITNESS:  Thank you.

16              MR. KELLEHER:  Your Honor, that's all the

17    evidence the State will be presenting.

18              THE COURT:  Any witnesses that you wish to

19    call?

20              MS. DEAN:  No, your Honor.  I just have an

21    argument.

22              THE COURT:  Okay, thank you.

23              MS. DEAN:  Your Honor, the case that is

 A-25

1  relevant here to this issue is Rhode Island vs. Innis,

2  I-N-N-I-S.  That is 499 U.S. 291.

3          THE COURT:  Wait a minute, 499 --

4          MS. DEAN:  I'm sorry, your Honor, 446 U.S.

5  291.

6          THE COURT:  446 --

7          MS. DEAN:  -- U.S. 291, 64 Lawyer's Edition

8  Second 297.  That is a 1980 United States Supreme Court

9  case.

10          In Innis, the Supreme Court, just to

11  summarize, says that, "Whenever a person who is in

12  custody is subject to either express questioning or its

13  functional equivalent, the term 'interrogation' refers

14  not only to express questioning, but also to any words

15  or actions on the part of the police other than those

16  normally attendant to arrest and custody that the

17  police should know are reasonably likely to elicit an

18  incriminating response.  The latter part of this

19  definition, the part about being reasonably likely to

20  elicit an incriminating response, focuses primarily

21  upon the perception of the suspect rather than the

22  intent of the police."

23          Now, applying that standard to this case,

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

A-26

1    first of all, it's undisputed that Mr. Guinn was in

2    custody.  We don't argue about that.  And it's

3    undisputed that he had not been given Miranda.  It is

4    our position that certain actions of the police were

5    the functional equivalent of questioning.

6              First of all, he was -- he was informed by

7    at least one of the officers why he was taken into

8    custody, so he knew that he was under arrest for a

9    probation violation and for a capias.  He was then

10   searched, so he knew that the police were looking for

11   other evidence or may find other evidence, which they

12   did.

13             Notably, aside from the usual handcuffing

14   and searching procedure, the officer, when he recovered

15   what turned out to be a small piece of cocaine from his

16   pocket, it had an unusual appearance and Officer Kuntzi

17   showed it to Officer Watts right there in the presence

18   of Mr. Guinn and either said -- well, we're not sure

19   what he said, but the idea was take a look at this

20   because -- do you think this is cocaine?  Officer Watts

21   then touched it, scraped it to see if it felt like

22   cocaine, and he thought it did, and that exchange

23   certainly indicated to the average person and probably

1    certainly to Mr. Guinn that there was something going

2    on here where he was going to be charged with something

3    more than just the violation of probation and the

4    capias.

5              So, it is our position that under the facts

6    of this case, that the actions of the police were the

7    functional equivalent of interrogation and the

8    statements that Mr. Guinn made should be suppressed

9    because he had not received Miranda Warnings at that

10   point.

11             THE COURT:  I gather the defense is making

12   an assumption here.  I don't think I've heard any

13   evidence about what was actually said between the

14   officers.  Some comment may have been made to draw the

15   officer's -- I mean the probation officer's attention

16   to the item seized from Mr. Guinn, thereby eliciting a

17   comment from another officer or to the extent of

18   examining that item to determine what it was.  You're

19   making an assumption that that occurred.

20             MS. DEAN:  It's the State's burden.  Once

21   we file the motion, the State has to present

22   evidence -- it's their burden to show this was a

23   lawfully-taken statement or an admissible statement,

1   and they don't have Officer Kuntzi here today.  We just

2   have Officer Watts.

3          I believe he testified that he did not

4   really recall exactly what, if anything, Officer Kuntzi

5   said to him, so we don't know really what Kuntzi said

6   to Watts, just that he -- we do know that he showed

7   Officer Watts the piece of cocaine in the present of

8   Mr. Guinn, but I don't believe we can make any

9   assumptions exactly about what was said.

10          THE COURT:  Okay.  Thank you.

11          Mr. Kelleher?

12          MR. KELLEHER:  Thank you, your Honor.

13          Your Honor, we certainly don't -- you know,

14   the law is what the law is, but it's basically a

15   factual inquiry the Court needs to make whether

16   arresting a defendant on a capias, searching him, and

17   removing contraband from his person constitutes a

18   search.

19          The State would submit that the actions the

20   police took when taking the defendant into custody in

21   this case are the exact same actions they take when

22   they take pretty much anyone into custody.  There were

23   two officers there.  There were two -- there was the

COPY

```
1              IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

2                      IN AND FOR KENT COUNTY

3

4     STATE OF DELAWARE,        ) C.A. No. IK02-08-0082, et al.
                                )
5              vs.              )
                                )
6     NATHAN GUINN,             ) Appeal No. 350, 2003
      I.D. No. 0207018218,      )
7                               ) Trial Beginning:
               Defendant.       ) May 12, 2003

8

9                      *   *   *   *   *

10

      BEFORE:   HON. WILLIAM L. WITHAM, JR., Judge,
11              and a jury

12

13                     *   *   *   *   *

14    APPEARANCES:

15              DENNIS KELLEHER, ESQ.
                Deputy Attorney General
16              on behalf of the State of Delaware

17              SANDRA DEAN, ESQ.
                Assistant Public Defender
18              on behalf of the Defendant

19

20                     *   *   *   *   *

21                      TRANSCRIPT OF TRIAL
                       Monday, May 12, 2003
                           Volume A
22
                VENDITA F. CLINE, C.S.R., R.P.R.
23                   Official Court Reporter
```

RECEIVED
AUG ⎵ ⎵ 2003
BY: _____

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter



A-30

1

INDEX TO TESTIMONY

2     STATE'S EVIDENCE

3                              Direct   Cross   Redirect   Recross

4     Douglas Watts            17       31      40         42
      Paul Kuntzi              45       55      63         74
5     Robert Neylan            64       74      80         81

6

7

8                    INDEX TO STATE'S EXHIBITS

9     NO.                                              PAGE

10    1    . . . . . . . . . . . . . . . . . . .       25
      A    . . . . . . . . . . . . . . . . . . .       27
11    2    . . . . . . . . . . . . . . . . . . .       29
      3    . . . . . . . . . . . . . . . . . . .       47
12    4    . . . . . . . . . . . . . . . . . . .       48

13

14

15

16

17

18

19

20

21

22

23

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

 A-31

```
 1              (Whereupon, a jury is duly impaneled,

 2  sworn, and dismissed.)

 3              MS. DEAN:  Your Honor, as I understand it,

 4  the State has three witnesses for this afternoon and

 5  one for 10 tomorrow morning.

 6              THE COURT:  That's correct.

 7              I also want to let the parties know about

 8  the Court's scheduling for the balance of the trial.

 9              Today, there should not be any further

10  interruptions, but tomorrow the Court has a -- there's

11  a teleconference at one o'clock.  That should last only

12  15 minutes.  Perhaps I can get that in the lunch hour,

13  so there's no need to worry about that, but at four

14  o'clock I have the Criminal Advisory Meeting.  I need

15  to break at four o'clock tomorrow.  If it goes beyond

16  that, on Wednesday we'll have sentencings at nine.

17  After that, there's another meeting at 1:15, I believe,

18  but hopefully that's the only thing that's going to

19  interrupt us, okay?

20              MS. DEAN:  We were wondering when your

21  Honor was going to give us the decision on the

22  suppression motion.

23              THE COURT:  I can do that right now.  I was
```

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

 A-32

1    planning to do that next.

2             In addition, the -- as a result of the

3    suppression hearing that took place on Friday, the

4    Court has reached a decision with respect to that and

5    here's the Court's decision.

6             The defendant has moved to suppress two

7    statements made to the police officer at the time

8    and place of the arrest -- and the probation officer --

9    immediately following their search of his person.

10   There's two -- the two statements, as I recall, are

11   basically that the money belongs to -- belongs to

12   someone else and that the pants -- I'm paraphrasing, of

13   course -- the pants belong to someone else.

14            The defendant was on probation and was also

15   the subject of an unexecuted capias when he was spotted

16   out and about after 10 o'clock by a Safe Streets Team.

17   The officers recognized the defendant and took him into

18   custody.

19            Upon searching his pockets, they found cash

20   and another item which was later proved to be cocaine

21   or allegedly so.

22            After police found the cash, but before the

23   Miranda Rights were read, the defendant made a

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

 A-33

1   statement to the effect that the cash belonged to his

2   girlfriend, and also prior to the Miranda Warnings, the

3   two officers examined the other item while standing

4   near the defendant.  One officer asked the other what

5   he thought the item was.  The other officer replied

6   that he thought it was cocaine.  The defendant then

7   stated these aren't my pants.

8           The defendant seeks to suppress both

9   statements as violations of the procedural safeguards

10  necessary to protect his Fifth and Fourteenth Amendment

11  privilege against self-incrimination.

12          The standard is quite clear.  Miranda

13  Warnings are designed to protect the defendant from

14  compulsory self-incrimination in a police atmosphere

15  with inherently compelling pressures which would work

16  to undermine the individual's will to resist and compel

17  him to speak where he would not otherwise do so freely.

18  Warnings must be given before interrogation when an

19  individual has been taken into custody or otherwise

20  deprived of his freedom in any significant way.

21          First, the Court must determine whether the

22  defendant was in custody.  Then the Court must

23  determine whether the police interrogated the suspect

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

 A-34

1    while in custody.

2              It's clear from the facts, and, in fact,

3    the State concedes, that Guinn was immediately taken

4    into custody and was in custody at the time Guinn made

5    the statements at issue.  The sole issue, therefore, is

6    whether the statements were spontaneous or were the

7    result of interrogation, whether by express questioning

8    or the functional equivalent of questioning as set

9    forth in Rhode Island vs. Innis, which was supplied to

10   the Court by the parties.

11             In this case, I think it was the

12   defendant -- the defendant concedes that there was no

13   direct questioning, but argues that the defendant was

14   subject to the functional equivalent of questioning as

15   defined in Rhode Island vs. Innis.

16             In that case, the Court pointed out that

17   words or actions on the part of the police, other than,

18   of course, those normally attendant to arrest and

19   custody, that the police should know are reasonably

20   likely to elicit an incriminating response.

21             In Innis, the police officers were

22   transporting a man suspected of murdering a taxi driver

23   with a sawed-off shotgun.  They suspected the gun had

1   been discarded near where the suspect was found.

2   During the transport, two of the officers held a

3   conversation in which they commented on the fact that a

4   school for handicapped children was nearby and it would

5   be sad if one of the children found the weapon for the

6   safety of the children.  The search for the weapon

7   should continue.  The suspect then led police to the

8   weapon.

9         The Supreme Court found that the suspect

10   was not subjected to words or actions that the police

11   should have known were reasonably likely to elicit an

12   incriminating response from him.

13         Delaware case law is replete with

14   applications of this standard.  For example, in State

15   vs. Patton, the suspect was in his vehicle, armed,

16   after he was brought to a stop following a chase.  For

17   more than two hours, a police officer engaged him in

18   conversation in an attempt to get him safely into

19   custody.  In response to the officer's question about

20   whether -- strike that.  In response to the officer's

21   question about what his daughter would think if he

22   committed suicide, the suspect confessed to stabbing

23   his girlfriend.  This was held to be a volunteered

1    statement not in response to questioning or the

2    functional equivalent of questioning.

3              I quote, "The case, thus, boils down to

4    whether, in the context of a brief conversation, the

5    officer should have known that the respondent would

6    suddenly be moved to make a self-incriminating

7    response."

8              Turning to the case at hand, the facts do

9    not support the assertion that the police officer

10   should have known that his question or questions to the

11   probation officer was likely to or reasonably likely to

12   elicit an incriminating response.  Therefore, the

13   motion to suppress should be denied.

14             In light of the lateness of the hour --

15   it's 12:30 now, a little after 12:30.  Come back at

16   1:30 -- make it 1:45.

17             We're going to start back here right,

18   Mr. Bailiff?

19             THE BAILIFF:  Yes, your Honor.

20             THE COURT:  All right.  We'll recess until

21   1:45.

22             (Whereupon, a luncheon recess is taken.)

23             MR. KELLEHER:  Good afternoon, your Honor.

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

A-37

1    proceeding.

2         Q.    Okay.  So, you don't have any knowledge

3    yourself about July 29th, July 31st, October 17th or

4    December 16th?  You don't know anything about those

5    yourself?

6         A.    No, I didn't sign those out at those dates.

7         Q.    And you signed it out on December 18th, the

8    empty envelope?

9         A.    Yes, ma'am.

10        Q.    And then the next day on December 19th?

11        A.    It was at the proceeding at that point.

12        Q.    Okay.  And then today?

13        A.    Yes, ma'am.  I took it out today.

14        Q.    Okay.  Now, officer, you testified that

15   this piece of cocaine had some black markings on it,

16   and I believe you -- your statement was it looked like

17   a pen or marker.  Is that what you said?

18        A.    Yeah, it looked like it was scribbled on

19   there, is what it appeared to me.

20        Q.    Okay.  Now, in your search of Mr. Guinn,

21   was any pen or marker found in his possession?

22        A.    No.

23        Q.    Now, in regard to the screwdriver, at the



1    time you seized it, did you notice any residue or white

2    powder, anything at all on the screwdriver?

3            A.    No, ma'am.

4            Q.    Okay.  Now, I believe your testimony was,

5    in response to one of Mr. Kelleher's questions, that a

6    drug user would only have maybe one or two twenties, in

7    your view?

8            A.    Yes.

9            Q.    Are you telling us that only poor people

10   come down there and use drugs?

11           A.    Absolutely not.

12           Q.    So, there's -- would you agree that

13   there's, sad to say, a lot of people with money who

14   come down there and use drugs?

15           A.    Absolutely, yes.

16           Q.    All right.  But you've never arrested one

17   of them, you've only arrested people who only had --

18           A.    When I have come into contact with people

19   and arrested them, drug users, they've only had 10 or

20   $20 on them.

21           Q.    You haven't arrested any of those drug

22   users who come down there who have money?

23           A.    Not on them.  Maybe in the bank or at home,

```
 1   but not on them.  I've never arrested a drug user with

 2   a lot of money on them.

 3        Q.   Unfortunately, they don't all get caught,

 4   do they, the drug users?

 5        A.   No, they don't.

 6        Q.   Are you the officer who obtains the warrant

 7   and takes all the information to the JP Court --

 8        A.   Yes, ma'am.

 9        Q.   -- to get the warrant?

10        All right.  And you obtain all the

11   information about the person you're arresting and the

12   probable cause and so forth, is that correct?

13        A.   Yes, ma'am.

14        Q.   All right.  And did --

15        MR. KELLEHER:  Your Honor, I want to

16   object.  If we could approach?

17        THE COURT:  All right, sidebar.

18        (Whereupon, a problem occurred with the

19   Court Reporter's tripod which required a short recess.)

20                    (Recess.)

21        MS. DEAN:  Your Honor, in further

22   discussion during the break, I'm going to withdraw that

23   question.  I'm sorry for causing all that trouble, but
```

VENDITA F. CLINE, C.S.R., R.P.R.
Official Court Reporter

A-40



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### THE SYKES BUILDING
### 45 THE GREEN
### DOVER, DELAWARE 19901

**LAWRENCE M. SULLIVAN**
PUBLIC DEFENDER

**ANGELO FALASCA**
CHIEF DEPUTY

**SANDRA DEAN**
ASSISTANT PUBLIC DEFENDER

**TELEPHONE**
(302) 739-4476

June 23, 2003

Nathan Guinn
SBI# 00280879
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

RE:  State v. Nathan Guinn ID# 0207018218

Dear Mr. Guinn:

In reply to your letter dated June 15, 2003,

(1) The Department of Justice has complete discretion on assignment of Prosecutors to particular cases and the Court will not interfere with that. Mr. Kelleher was not needed to testify as a witness because Mr. Harpster testified on your behalf.

(2) An Appeal on Pre-Trial Motions is specifically NOT permitted in Criminal cases until after Verdict and Sentencing.

There is no legal basis for a Motion for New Trial. Within thirty (30) days after Sentencing, a Notice of Appeal will be filed with the Delaware Supreme Court.

Very truly yours,

*Sandra W. Dean*

SANDRA W. DEAN, ESQUIRE
Assistant Public Defender

SWD/msc



A-41

# SUBPOENA

## CRIMINAL CHARGES

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR      KENT      COUNTY

You KIMKESHIA HARBOR
   107 KENT APTS
   30 S. NEW STREET
   DOVER, DE 19904
   678-4720

*no show again*

are hereby commanded,

by the SUPERIOR COURT OF THE STATE OF DELAWARE, to appear for the      TRIAL

**STATE OF DELAWARE V.**      NATHAN GUINN

AT THE COURTHOUSE, 38 THE GREEN, DOVER,
DELAWARE.

TIME 9:00 A.M., MONDAY, MARCH 3, 2003

YOU WILL APPEAR BEFORE THE SUPERIOR COURT TO
TESTIFY FOR THE DEFENDANT.

YOU MUST APPEAR REGARDLESS OF OTHER BUSINESS OR
PERSONAL COMMITMENTS. IF YOU FAIL TO APPEAR, A
CAPIAS WILL BE ISSUED FOR YOUR IMMEDIATE ARREST
ON A CONTEMPT OF COURT CHARGE.

IF YOU HAVE ANY QUESTIONS, CALL 739-4476.

## BRING THIS SUBPOENA WITH YOU!

Witness the Judges, Superior Court, at

PER PROTHONOTARY BY _____, DEPUTY.

*Placed under door at #107 Kent Apt Thur 02/27/03 1400 hrs*

*w/t: mother Mary Davis answered door & advised w/t apt*

| I.D. No. | Issue Date | CRA # | Sheriff File # | Deputy |
|---|---|---|---|---|
| 0207018218 | 02/26/03 | IK 02-08-0082 | | SWD |

A-42

# SUBPOENA
## CRIMINAL CHARGES

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

You,  Kimkeshia Harbor
107 Kent Apts
30 S. New Street
Dover, DE  19904
678-4720

are hereby commanded by the SUPERIOR COURT OF THE STATE OF DELAWARE to

appear for the Trial of

### STATE OF DELAWARE v. NATHAN GUINN

at the Courthouse, 38 The Green, Dover, Delaware.

TIME:  Tuesday, April 8, 2003 at 9:00 a.m.

You will appear before the Superior Court to testify for the Defendant.

You must appear regardless of other business or personal commitments.  If you fail to appear, a capias will be issued for your immediate arrest on a contempt of Court charge.

If you have any questions, call Sandra W. Dean, Esquire at (302) 739-4476 ext. 206.


**BRING THIS SUBPOENA WITH YOU!**

Witness the Judges, Superior Court, at


_____

Prothonotary


Sandra W. Dean, Assistant Public Defender

| ID No. | Issue Date | CRA Nos. | Sheriff File No. | Deputy |
|--------|-----------|----------|------------------|--------|
| 0207018218 | 03/05/03 | IK 02-08-0082 | | |

A-43



# Memorandum

| | |
|---|---|
| **To:** | Robert A. Harpster, Esquire |
| **CC:** | file |
| **From:** | Robert B. Truitt, Sr., Investigator |
| **Date:** | September 24, 2002 |
| **Subject:** | State v. Nathan Guinn |

ON THURSDAY, 09/19/02, AT 1545 HRS, WRITER PHONED THE RESIDENCE OF KIMKESHIA HARBER, 302-678-4720, LEFT MESSAGE IN THE VOICE MAIL TO CALL WRITER.

ON THURSDAY, 09/19/02, AT 1615 HRS, WRITER PHONED 302-734-1497 IN AN ATTEMPT TO CONTACT SAMUEL INGRAM.  WRITER REACHED WHAT SEEMED TO BE A FAX LINE.

ON THURSDAY, 09/19/02, AT 1920 HRS, WRITER PHONED KIMKESHIA'S RESIDENCE AND REACHED KIMKESHIA'S BROTHER, TERRANCE HARBER. WRITER WAS ADVISED THAT KIMKESHIA GOES TO DEL TECH COLLEGE DURING THE DAY AND WORKS AS A NURSE DURING THE EVENING. STATED HE WILL TELL HER TO CALL WRITER.

ON THURSDAY, 09/19/02, AT 1930 HRS, WRITER AGAIN ATTEMPTED TO PHONE SAMUEL INGRAM AND REACHED A FAX LINE.

ON FRIDAY, 09/20/02, AT 1252 HRS, WRITER AND INVESTIGATOR BATES RESPONEDE TO 95 PALMER PARK, DOVER.  WRITER CONTACTED, ROBIN DANIELS, WHO IS THE AUNT OF SAMUEL INGRAM.  ROBIN ADVISED SAMUEL NOW LIVES WITH HIS FATHER, LOUIS BUMBREY, AT 8 SOUTH MAIN ST, APT 5, SMYRNA, DEL. 302-331-1485.  ROBIN CALLED LOUIS WHILE WRITER WAS PRESENT WITH NEGATIVE RESULTS.

ON SUNDAY, 09/22/02, AT 1857 HRS, WRITER AGAIN PHONED KIMKESHIA AND REACHED KIMKESHIA'S SISTER, DEANNA.  WRITER WAS ADVISED KIMKESHIA WAS WORKING AND DEANNA WOULD LEAVE A MESSAGE FOR KIMKESHIA TO CALL WRITER.

ON MONDAY, 09/23/02, AT 1055 HRS, WRITER RECEIVED A CALL FROM LOUIS BUMBREY, DOB 04/20/59, FATHER OF SAMUEL INGRAM, 302-331-1485. LOUIS ADVISED THAT SAMUEL DOES LIVE WITH HIM AT 8 SOUTH MAIN ST. APT 5 SMYRNA, DEL.  LOUIS ADVISED HE WAS AWARE OF THE SITUATION

A-844

WITH SAMUEL AND CLIENT. LOUIS GAVE WRITER PERMISSION TO SPEAK WITH SAMUEL EVEN IF SAMUEL WAS NOT AT HOME.

ON MONDAY, 09/23/02, AT 1408 HRS, WRITER AND INVESTIGATOR BATES RESPONDED TO 8 SOUTH MAIN ST. APT 5 SMYRNA, DEL. WRITER CONTACTED SAMUEL COLIN INGRAM, DOB 11/03/84.

SAMUEL STATES ON THE DATE AND TIME IN QUESTION, HE WAS LIVING WITH CLIENT, WHO IS HIS BROTHER, AT APT 107 KENT APTS DOVER, DEL. STATES HE WAS OUTSIDE WALKING AROUND WHEN CLIENT CAME HOME. CLIENT WENT INSIDE THE APT AND CHANGES HIS SHORTS. CLIENT PUT ON A PAIR OF SAMUEL'S SHORTS (JEAN SHORTS). SAMUEL HAD TAKEN THE SHORTS OFF AND PLACED THEM ON THE FLOOR IN THE BEDROOM. CLIENT EXITED THE BUILDING WEARING SAMUEL'S SHORTS. AS SOON AS CLIENT EXITED THE BUILDING, PROBATION AND PAROLE CONTACTED THE CLIENT. THEY SEARCHED CLIENT AND FOUND CRACK COCAINE IN THE POCKET OF THE SHORTS. SAMUEL STATES HE TOLD THE PROBATION OFFICER THE SHORTS BELONGED TO HIM (SAMUEL). SAMUEL HAD FORGOTTEN THAT HE HAD PLACED THE COKE IN THE POCKET. SAMUEL WAS HOLDING THE COKE FOR A FRIEND NAMED DEMETRICE STRATTON. DEMETRICE IS NOW DECEASED, SUFFERED AN ASTHMA ATTACK. SAMUEL TRIED TO TELL THE PROBATION OFFICER AND THE POLICE THE CRACK DID NOT BELONG TO CLIENT, BUT THEY WOULD NOT LISTEN TO HIM. SAMUEL STATES HE WILL TESTIFY TO THIS IN COURT.

ON MONDAY, 09/23/02, AT 1430 HRS, WRITER AND INVESTIGATOR BATES RESPONDED TO THE TERRY CAMPUS AT DEL TECH COLLEGE. WHILE THERE, WRITER OBTAINED A SCHEDULE FOR KIMKESHIA. WHILE AT THE CAMPUS, WRITER PHONED KIMKESHIA'S RESIDENCE. KIMKESHIA ANSWERED ADVISING SHE COULD NOT TALK AT THIS TIME, SHE HAD TO GET TO WORK. SHE DID ADVISE SHE WILL BE HOME BY 1130 HRS, ON TUESDAY, 09/24/02.

ON TUESDAY, 09/24/02, AT 1155 HRS, WRITER AGAIN PHONED KIMKESHIA'S RESIDENCE. WRITER REACHED THE VOICE MAIL AND LEFT A MESSAGE.

ON TUESDAY, 09/24/02, AT 1220 HRS, WRITER INTERVIEWED KIMKESHIA WESTRY HARBER, DOB 08/21/82, 107 KENT APTS, 30 S/NEW ST. DOVER, DEL. 19904, 302-678-4720. INTERVIEWED BY PHONE.

KIMKESHIA STATES CLIENT IS THE FATHER OF THIER TWO YEAR OLD SON. CLIENT WAS LIVING WITH HER BEFORE HE WAS ARRESTED. THE MONEY THAT CLIENT HAD ON HIS PERSON, WHEN CONTACTED BY PROBATION AND PAROLE, BELONGED TO HER. STATES CLIENT APPARANTLY REMOVED THE MONEY FROM THE BEDROOM DRESSER WHEN HE WENT OUTSIDE. STATES SHE HAD PLACED APPROXIMATELY $432.00 ON THE DRESSER. THE MONEY WAS TO BE USED FOR BILLS. STATES THE DAY BEFORE THE ARREST, SHE BORROWED $300.00 FROM CASH ADVANCE, RODNEY VILLAGE SHOPPING CENTER. STATES SHE ALSO GOT PAID THAT SAME DAY. STATES CLIENT REMOVED THE MONEY FOR SAFE KEEPING

BECAUSE HE HAS FRIENDS AND FAMILY IN THE HOUSE AT DIFFERENT TIMES. STATES SAMUEL WAS LIVING WITH THEM AT THAT TIME. SAMUEL'S FATHER HAD KICKED HIM OUT OF THE HOUSE AND HE HAD NO PLACE TO LIVE. STATES SHE REMEMBERS THE DENOMINATION OF THE MONEY WAS $20 DOLLAR AND $1 DOLLAR BILLS. STATES SHE IS EMPLOYED AT SILVER LAKE NURSING HOME IN DOVER AND SHE WAS AT WORK WHEN THE INCIDENT OCCURRED. STATES SHE ATTENDS DEL TECH COLLEGE DURING THE DAY AND WORKS AS CNA IN THE EVENINGS. STATES SHE IS NOW STUDYING FOR HER LPN. STATES SHE WILL TESTIFY BUT CAN'T MISS ANY CLASSES AT SCHOOL. SHE WOULD NEED TO KNOW WHAT DAY AND TIME SHE WOULD BE NEEDED.

A-46

I, Samuel Ingram of sound mind and body. Confess that was in fact my blue jean cargo shorts that Mr. Nathan Guinn was wearing on Sat. July 27, 2002 Therefore admit that all the contents with in the shorts belonged to me as well, with the exception of the $424.00 in cash. Which belongs to my knowledge to a Ms. KimKoshia Harber.

This is my 4th confession, being once at the arrest, secondly at the police station, third at the court #7 and now in written form. So, I lastly admit that I have not been tricked, threatened or forced in any way to make this confession.

Sincerly,

Samuel Ingram
Printed name

Samuel Ingram
signature

A-147

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR _____Kent_____ COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | * | |
| | * | |
| V. | * | CrA. No.: 1K02-08-0082R1 |
| | * | Thru |
| Nathan L. Guinn | * | 1K02-08-0085R1 |
| Defendant | * | |

## AFFIDAVIT

I, __Samuel Ingram__, being duly sworn, desposes and says:

That I truly and fully admit to ownership of the cocaine found on Nathan L. Guinn on the night of July 27th 2002. I allowed Mr. Guinn to borrow a pair of my jean shorts that night and admittedly forgot to warn Mr. Guinn of the cocaine inside of the small watch pocket of the shorts. I was not contacted to testify in Mr. Guinn's second trial. I'am willing to testify and admit ownership of the contraband on the record and in front of a jury.

_Samuel Ingram_

SUBSCRIBED AND SWORN before me this _7th_ day of _December_, 2004

_Timothy J. Martin_
(Notary Public)

my Commission expires: June 14, 2006

A-48

# Memorandum

| | |
|---|---|
| To: | File |
| CC: | |
| From: | Robert A. Harpster, Esquire |
| Date: | December 17, 2002 |
| Subject: | State v. Nathan Guinn |

Samuel Ingram did not appear for Trial this morning at 9:00 .a.m. I received a call from Mr. Ingram at approximately 10:00 a.m. indicating he had overslept and did not have transportation to get to Court.

I spoke with Mr. Ingram about his potential trial testimony. Mr. Ingram indicated he had no knowledge of the cocaine found in the shorts Mr. Guinn was wearing. He indicated he had lent the shorts to someone else to wear and did not check the pockets. He then lent the shorts to Mr. Guinn.

I met with Mr. Guinn in cell block and advised him of Mr. Ingram's testimony. Mr. Guinn indicated he did not want Mr. Ingram to testify and wanted to proceed with the defense that the drugs found on his possession was consistent with simple possession.

I discussed possible continuance with the defendant. Defendant did not object to request. A continuance request was granted for 1 day based on Mr. Ingram's failure to appear.

RAH/tlh

A-B49

STATE OF DELAWARE
     v.
NATHAN L. GUINN
    defendant

               CrA.No.: IK02-08-0082R1
                   through
               IK02-08-0085R1

## AFFIDAVIT

    I, SAMUEL INGRAM, being duly sworn, desposes and says that:
I did in fact deny ownership of the cocaine during a phone call with
Robert Harpster on December 17, 2002. I do in fact admit changing my
testimony, but only out of fear of self-incrimination and possible
being charged myself with such serious offenses. I did wish to come
forth and testify but was told that Mr. Guinn had been given a
mis-trial, so when I was never contacted by Mr. Guinn's lawyer after
the first trial it was impossible for me to know there was a second
trial therefore I assumed Mr. Guinn had been acquitted of the charges
against him. I'll once again verify that the cocaine belonged to me,
and further state that on the night of July 27, 2002 Mr. Guinn's statement
of "That's His" was taken out of context. Mr. Guinn was not talking
about the money that obviously belong to him, but was referring to the
cocaine. The Officer (Kuntzi) simply mistook the statement because
he had both money and cocaine in the same hand at the same time. I
adamatly tried to clarify this with the Officers, but was told to
Stand Back, and to Move On by police. Mr. Guinn could not have
knowing possessed the cocaine found in his pocket if he did not
know it was there. Thus can be guilty of only ignorance to my negligence
to inform him of what was in the pocket of the jean shorts I lent
him. Mr. Guinn should be released for his innocence. I duly swear
that the above statements are true and am willing to pronounce them
in front of a jury and be tested under cross-examination.

                    *Samuel Ingram*

SUBSCRIBED AND SWORN before me this 12th day of July, 2005

                         *Edward Johnson*
                           Notary

A-49

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE OF DELAWARE

  VS.

NATHAN L GUINN

Alias: NO ALIASES

DOB: 09/30/1980
SBI: 00280879

CASE NUMBER:      CRIMINAL ACTION NUMBER:
0207018218       IK02-08-0082
           PWITD NSII CS(F)
           COCAINE
           IK02-08-0083
           DEL 300' PARK(F)
           IK02-08-0085
           POSS DRUG PARAP(M)

COMMITMENT

## SENTENCE ORDER

NOW THIS 25TH DAY OF JUNE, 2003, IT IS THE ORDER OF THE
COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
Costs are hereby suspended. Defendant is to pay all
statutory surcharges.


 AS TO IK02-08-0082- : TIS
 PWITD NSII CS (COCAINE)

 The defendant is to pay a fine in the amount of $5000.00
of which $5000.00  is suspended (see attachment).

**Effective June 25, 2003  the defendant is sentenced
as follows:**

 - The defendant is placed in the custody of the Department
of Correction for 30 year(s) at supervision level 5


 - Suspended after serving 16 year(s)  at supervision level
5


 AS TO IK02-08-0083- : TIS
 DEL 300' PARK

STATE OF DELAWARE
              VS.
NATHAN L GUINN
DOB: 09/30/1980
SBI: 00280879

 - The defendant is placed in the custody of the Department
of Correction for 5 year(s) at supervision level 5

 - Suspended after serving 9 month(s)  at supervision level
5

 - Followed by 6 month(s)  at supervision level 4 **WORK
RELEASE**

 - Followed by 1 year(s)  at supervision level 3

 - Hold at supervision level 5

 - Until space is available at supervision level 4 **WORK
RELEASE**

 Probation is concurrent to criminal action number
VK00030017 .


 AS TO IK02-08-0085- : TIS
 POSS DRUG PARAP

 - The defendant is placed in the custody of the Department
of Correction for 1 year(s) at supervision level 5

 - Suspended for 6 month(s)  at supervision  level 2


 Probation is concurrent to criminal action number
IK02080083 .

## SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
     VS.
NATHAN L GUINN
DOB: 09/30/1980
SBI: 00280879

                    CASE NUMBER:
                      0207018218

The Defendant is to pay all financial obligations pursuant to a schedule established by probation officer.

Should the defendant be unable to complete financial obligations during the period of probation ordered, the defendant may enter the work referral program until said obligations are satisfied as determined by the Probation Officer.

Be assigned to the job training program until such program is completed.

Obtain and remain gainfully employed.

Obtain and maintain full-time employment of 35 hours or more per week with no unemployment greater than 10 consecutive days. Evidence of wages to be supplied monthly to the Probation Officer.

Have no drugs/alcohol during period of sentence unless medically prescribed.

Submit to random urinalysis or such other drug testing as deemed appropriate.

Defendant shall be evaluated for substance abuse and follow recommendation for treatment, counseling and screening.

Level V  is consecutive to any now serving.

Zero tolerance for substance abuse trtmt

### NOTES

ADDITIONAL SPECIAL CONDITIONS:
**APPROVED ORDER**    3    June 30, 2003 11:06

STATE OF DELAWARE
        VS.
NATHAN L GUINN
DOB: 09/30/1980
SBI: 00280879

While at Supervision Level V, the defendant shall enroll in
and successfully complete the following programs:
Thresholds; Lifeskills; Substance Abuse Reality; and the
Pre-release Program.

The Level V portion of this sentence shall be served
consecutively to the Level V sentence imposed in
VK00-03-001702.

The Defendant shall complete a Level V Substance Abuse
Treatment Program that is to be determined by the
Department of Correction during the last 2 years of his
imposed Level 5 Sentence.

The defendant shall abide by a 10:00 p.m. curfew, 7 nights
per week, during all periods of his probation, unless
modified for employment needs.

Case ID Number 0002017876, CRA No. VK00-03-0017, is
Discharged as Unimproved from probation.  Any monies owed
are suspended.


The Department of Correction shall notify this Court if any
aspect of this sentence cannot be carried out.

_____

JUDGE WILLIAM L WITHAM JR.

## FINANCIAL SUMMARY

STATE OF DELAWARE
     VS.
NATHAN L GUINN
DOB: 09/30/1980
SBI: 00280879

                    CASE NUMBER:
                      0207018218


SENTENCE CONTINUED:

| | |
|---|---:|
| TOTAL DRUG DIVERSION FEE ORDERED | |
| TOTAL CIVIL PENALTY ORDERED | |
| TOTAL DRUG REHAB. TREAT. ED. ORDERED | 750.00 |
| TOTAL EXTRADITION ORDERED | |
| TOTAL FINE AMOUNT ORDERED | .00 |
| FORENSIC FINE ORDERED | |
| RESTITUTION ORDERED | |
| SHERIFF, NCCO ORDERED | |
| SHERIFF, KENT ORDERED | |
| SHERIFF, SUSSEX ORDERED | |
| PUBLIC DEF, FEE ORDERED | |
| PROSECUTION FEE ORDERED | |
| VICTIM'S COM ORDERED | 900.00 |
| VIDEOPHONE FEE ORDERED | 3.00 |

---

TOTAL                                   1,653.00

54

<u>SURCHARGES</u>

STATE OF DELAWARE
     VS.
NATHAN L GUINN
DOB: 09/30/1980
SBI: 00280879

CASE NUMBER:
  0207018218

| CRIM ACTION # | DESCRIPTION | AMOUNT |
|---|---|---|
| IK02-08-0082 | DRTE | 750.00 |
| IK02-08-0082 | VCF | 900.00 |

**APPROVED ORDER**    6    June 30, 2003 11:06

55