18
                    Josefina Tengonciang - Cross

1    later?
2         A.   I prepared the report at the same day I
3    finished, but it takes our secretary to type all the
4    reports that we are handing in to her, so this
5    report was typed on the 10th -- no, on October 24
6    when I signed the report.
7         Q.   So the October 24 date is the date you
8    signed the report?
9         A.   The final report.
10        Q.   All right. And is it to the best of your
11   recollection a chunky off-white substance? Is that
12   a correct description of the piece that you tested?
13        A.   Yes, ma'am.
14             MS. DEAN: No other questions, Your Honor.
15                    REDIRECT EXAMINATION
16   BY MR. KELLEHER:
17        Q.   Ms. Tengonciang, did you notice any black
18   substance with the evidence when you tested it?
19        A.   Yes, I have.
20        Q.   You noticed that when you first examined
21   it?
22        A.   Yes, sir.
23        Q.   Do you remember testifying in a prior

Josefina Tengonciang - Redirect

1  proceeding in connection with this evidence?
2       A.   Yes, sir.
3       Q.   And did you look at the evidence at that
4  time?
5       A.   Yes, sir.
6       Q.   And do you remember seeing that same black
7  substance?
8       A.   Yes, sir.
9       Q.   Can you look at State's A now. Do you see
10 that same black substance today?
11      A.   Yes. It is still in the plastic bag.
12           MR. KELLEHER:   No other questions, Your
13 Honor.
14                   RECROSS-EXAMINATION
15 BY MS. DEAN:
16      Q.   So was it incorrect just a minute or two
17 ago when you said that a chunky off-white substance
18 would not be an accurate description of the
19 substance because now you have said it had black on
20 it?
21      A.   There is -- it looks like to me is a
22 fingerprint powder outside the plastic bag. It is
23 not in the chunky off-white substance, the substance

B-2

SHEILA A. DOUGHERTY
Official Court Reporter

```
                                                              20
                    Josefina Tengonciang - Recross
```

1  inside.
2      Q.   Okay.  So your testimony is that there is
3  a black substance which you think looks like
4  fingerprint powder?
5      A.   That is on my notes, on my worksheets.
6      Q.   Okay.  And that that is not on the cocaine
7  itself?
8      A.   No.  No, ma'am.
9      Q.   It is on the bag?
10     A.   Yes.  Outside the bag.
11     Q.   On the outside of the bag, not on the
12 cocaine itself?
13     A.   Yes.  That's correct.
14     MS. DEAN:  Okay.  Thank you.
15     REDIRECT EXAMINATION
16 BY MR. KELLEHER:
17     Q.   Ms. Tengonciang, can I have you open that?
18 Can you go ahead and unwrap that?  Can you see the
19 substance in there?
20     A.   Yes.
21     Q.   Can you describe it?
22     A.   There is some black markings on this
23 off-white chunky substance.

SHEILA A. DOUGHERTY
Official Court Reporter

Josefina Tengonciang - Redirect

1    Q.    The substance itself is sort of an
2  off-white color; correct?
3    A.    Yes, it is an off-white.
4    Q.    And there is something on top of it?
5    A.    Yes.
6    Q.    Can you --
7         MR. KELLEHER:  Your Honor, if I could have
8  the witness sort of approach the jury and just allow
9  them all to see it.  I don't necessarily want the
10 jury to handle it all, but I think she can walk in
11 front of the jury so they can get a close look at
12 the substance.
13        THE COURT:  Why don't I have Mr. Sanchez
14 escort the examiner over there.  You may do so.
15        (The witness left the witness stand).
16        MR. KELLEHER:  If I could just have you as
17 best you can sort of rewrap that and put it all
18 together.
19        No other questions, Your Honor.
20              RECROSS-EXAMINATION
21 BY MS. DEAN:
22   Q.    You have been testing this type of
23 evidence for a long time, right?  Did you say eight

B-4                    SHEILA A. DOUGHERTY
                       Official Court Reporter

22

Josefina Tengonciang - Recross

1 years?
2    A.   Eighteen and a half years.
3    Q.   Eighteen years. Excuse me. After looking
4 at that just now, is it still your opinion that the
5 black substance could be fingerprint powder?
6    A.   Yes. It looks like to me it is
7 fingerprint substance.
8       MS. DEAN: Okay. No other questions, Your
9 Honor.
10       MR. KELLEHER: No further questions, Your
11 Honor. We ask that the witness be excused.
12       THE COURT: I have some questions for her.
13       MR. KELLEHER: I am sorry.
14 BY THE COURT:
15    Q.   How do you pronounce your name, ma'am?
16    A.   Tengonciang.
17    Q.   Ms. Tengonciang, is it your testimony that
18 the black powder, was that on the substance when you
19 received it from the police agency?
20    A.   Yes, it is so because the plastic bag has
21 black letters, not fingerprint, the black powder
22 substance, and it is wrapped, so it was just on the
23 outside of the off-white chunky substance.

SHEILA A. DOUGHERTY
Official Court Reporter

B-5

120

1  Mr. Guinn had any intent to deliver the cocaine.
2  Spend all the time you need deliberating that first
3  point, the evidence problem.  If you get past that
4  part, then take a close look at the lack of evidence
5  in this case of any intent to deliver, and we would
6  ask you to bring back verdicts of not guilty.
7           THE COURT:  Mr. Kelleher, any rebuttal?
8           MR. KELLEHER:  Yes, Your Honor.
9           Ms. Dean stated to you that we have to
10 prove that the evidence we introduced is cocaine and
11 was taken from his person.  We disagree with that
12 slightly.  What we have to prove is that what the
13 defendant possessed on 7-27 was cocaine.
14          Now, you could consider that the chain of
15 custody from the time it was seized until the time
16 the medical examiner tested it, believe that to be
17 without fault, without any problem, and know that
18 whatever was seized was cocaine, and not believe
19 that there was beyond a reasonable doubt that this
20 problem in December -- I am confusing myself.  You
21 could believe that that was a real problem in
22 December, and that what we have introduced as
23 State's 6 is not in fact the cocaine that was seized

B-6

SHEILA A. DOUGHERTY
Official Court Reporter

1  from the defendant, and still convict him of
2  possession.
3         Possession with intent or possession
4  within 300 feet of a school. The issue is whether
5  what he possessed that day was cocaine. Now, what
6  do you look at from the time of the seizure to the
7  time of testing? The only conflicts that Ms. Dean
8  has mentioned to you are that the officer said they
9  thought it was from a pen, these black marks were
10 from a pen, and that the medical examiner thought it
11 was fingerprint powder.
12        Now, what is it or what it wasn't or what
13 it might be is not an issue in the case. It was
14 there. The medical examiner saw it. She opened it
15 in front of you and said it looks the same now as it
16 did when she tested it. The officers looked at it
17 and said, Looks the same now as when we seized it.
18 There are no problems with the chain from the time
19 it was seized and the time it was tested. You can
20 be satisfied beyond a reasonable doubt that the
21 evidence that was seized from the defendant was
22 cocaine.
23        Now, there is this issue in December

122

1  whether the evidence was left in the room for a
2  couple of days, and again you can be satisfied about
3  the first part, have questions about the second
4  part, and still convict the defendant.
5          MS. DEAN: Your Honor, may we approach,
6  please? I have an objection. Could we have the
7  court reporter?
8          THE COURT: All right. Why don't we take
9  the jury out.
10          (The jury left the courtroom.)
11          MS. DEAN: Your Honor, Mr. Kelleher's
12  argument in this last portion is a misstatement of
13  the law, I believe. He is arguing that if the jury
14  believes -- if the jury has reasonable doubt that
15  this piece of cocaine, this whatever this is
16  introduced into evidence in this trial, if they
17  believe that it may not be the same evidence tested
18  by the medical examiner, that they could still find
19  him guilty.
20          Now, I will confess that I have never seen
21  facts just exactly like this, so I can't cite to you
22  some other case, but --
23          THE COURT: Just a minute.

SHEILA A. DOUGHERTY
Official Court Reporter

123

1   MR. DEAN: I cannot cite a case, but I
2   believe that is a misstatement of the law. I
3   believe that the jury, in order to find him guilty,
4   has to believe that the evidence introduced in this
5   trial is what is represented -- what they
6   represented to be, which is the object that was
7   taken from Mr. Guinn. And I -- that is our problem
8   with the argument.
9         THE COURT: All right. I understand the
10  thrust of your argument. Go ahead.
11        MR. KELLEHER: Your Honor, it is well
12  settled that in order for a defendant to be
13  convicted of possession of a controlled substance,
14  the controlled substance itself does not have to be
15  produced. As long as there is sufficient
16  circumstantial evidence to convince a jury beyond a
17  reasonable doubt that he at the time and place of
18  the arrest was in possession of it, he could be
19  convicted, whether the evidence was destroyed, lost,
20  smoked, stolen by pixies.
21        The question that the jury is faced with
22  and the Court is concerned with is whether the State
23  can prove beyond a reasonable doubt that the

B-9

SHEILA A. DOUGHERTY
Official Court Reporter

124

1  defendant in the time and place stated in the
2  indictment possessed cocaine. We don't have to
3  prove beyond a reasonable doubt that we possessed
4  cocaine today.
5          Now, there are two important -- as I was
6  telling the jury -- two important times in this case
7  with the custody of the drugs. If a jury is
8  satisfied that the drugs seized were the same as the
9  drugs tested, and then they disappeared, they could
10 still find the defendant guilty.
11         I would turn the Court's attention to the
12 case of Seward v. State. Cite is 723 A.2d 365, a
13 Supreme Court case from 1999. In that the Court
14 states that to our knowledge no Court has held that
15 the scientific interests of the substance is an
16 absolute prerequisite to conviction for a
17 drug-related offense and they are unwilling to
18 announce such a ruling. It also goes on to say, the
19 courts have held the court may establish the
20 identity of a drug through cumulative circumstantial
21 evidence as long as the government produces
22 sufficient evidence, direct or circumstantial, from
23 which a jury is able to identify the substance

B-10

SHEILA A. DOUGHERTY
Official Court Reporter

125

1  beyond a reasonable doubt. The lack of scientific
2  evidence is not objectionable.
3           The State would argue that if it is not an
4  absolute prerequisite that the items be tested, that
5  it is certainly not an absolute prerequisite that
6  the items be introduced. The jury in this case
7  could have some doubt that in that period in
8  December when the drugs were outside the evidence
9  locker they could have been tampered with, but that
10 doesn't change the fact that they were tested well
11 before that.
12          THE COURT: I understand that. I think
13 Ms. Dean cut you off because she was afraid you were
14 going to misstate the law. As I recall from --
15          MS. DEAN: No, I still believe I am
16 familiar with Seward, and this line of cases has to
17 do with cases where the cocaine was never recovered
18 at all, where there is other evidence that the
19 person was using cocaine, selling it or whatever,
20 but for some reason when they are not able to
21 recover the cocaine, and the Supreme Court has held
22 in those cases that circumstantial evidence is
23 sufficient.

SHEILA A. DOUGHERTY
Official Court Reporter

1  However, I still believe that when the
2  evidence is introduced into evidence, in other
3  words, the State could have chosen just to present
4  the medical examiner's testimony and the lab report
5  and not introduce the cocaine into evidence, or
6  whatever it is. But since they did, it is our
7  position that they have to prove that this object
8  here at this trial is the same object taken out of
9  Mr. Guinn's pocket.
10  So I think it is distinguishable from
11  cases where no cocaine was ever recovered or tested.
12  It is not circumstantial evidence, it is the actual
13  evidence here, and I would stand by my position on
14  that.
15  THE COURT: All right. I don't think you
16  are not arguing that the -- I don't think, and
17  Mr. Kelleher can certainly stand up and say he is,
18  but I don't think he is arguing that the evidence
19  which is represented in Exhibit 6 is not the
20  evidence which was seized from the defendant.
21  MR. KELLEHER: No, Your Honor. I was
22  planning on arguing that they should be satisfied
23  beyond a reasonable doubt that the State's 6 is in

1  fact what was seized from the defendant.

2  However, my argument here is that despite
3  my contention, even if they do have a doubt, that
4  some time between the evidence being tested and the
5  time it was produced in court, that somebody
6  switched it, they could still find the defendant
7  guilty because as long as the chain -- as long as
8  they are satisfied that from the time of seizure to
9  the time of testing there is no problems, they can
10 be satisfied beyond a reasonable doubt that what was
11 seized was cocaine, independent of the question of
12 whether what was produced in court is what was
13 seized back in July.

14 THE COURT: Then you have altered your
15 thrust of the prosecution's theory.

16 MR. KELLEHER: My theory is that it is all
17 the same. However, there is an additional argument
18 that whether it is or isn't, as long as it is the
19 same from seizure to testing, the jury can find him
20 guilty.

21 THE COURT: But you have introduced the
22 evidence as representing the evidence which was
23 seized, which the prosecution believes, and believes

128

1   it established the elements of proof for the jury
2   concerned to find that evidence to be the evidence
3   of cocaine, and I think Ms. Dean has got a point
4   here. I am not going to allow the prosecution to
5   wave a double-edged sword here at the jury.
6         MR. KELLEHER: If I can interrupt, I think
7   the Court needs to be cognizant of the different
8   standard of proof in relation to the admissibility
9   of the evidence and proof beyond a reasonable doubt.
10        Now, obviously I have ethical duties here.
11  I believe this evidence to be the evidence. I can't
12  argue that to a jury because my belief is not
13  properly placed before them. However, we have
14  argued to the judge that --
15        THE COURT: Jury.
16        MR. KELLEHER: Well, we have argued to
17  Your Honor that the admissibility is fine, that it
18  should be admitted. Your Honor has ruled on the
19  initial question of admissibility and said that, you
20  know, it is admissible. There are, however,
21  questions of the evidence's credibility, both based
22  on the slight discrepancy between the medical
23  examiner's testimony and the officer's testimony

SHEILA A. DOUGHERTY
Official Court Reporter

B-14

```
 1  arguing that they can believe that it is not the
 2  evidence seized.
 3          THE COURT:  I think you ought to clear,
 4  make sure you -- I see your point, Mr. Kelleher, but
 5  I think you need to make sure, you need to clarify
 6  it in the argument to the jury.
 7          MR. KELLEHER:  Certainly.
 8          THE COURT:  Okay.  All right.  Thank you,
 9  Ms. Dean.
10          I think to the extent that you raised an
11  objection I am going to overrule it because I think
12  Mr. Kelleher has clarified his position in this
13  regard, and provided Mr. Kelleher makes it clear to
14  the jury that you are not arguing that the evidence
15  seized and that has been introduced is not the
16  evidence for which the -- not the evidence of the
17  cocaine which the prosecution based its theory on
18  that was seized from the defendant.
19          However, it is not an incorrect statement
20  of law from what Mr. Kelleher said about the fact
21  that you can still establish there was a possession
22  of cocaine without having introduced the evidence,
23  as you outlined in the Seward cases.  Okay?
```

SHEILA A. DOUGHERTY
Official Court Reporter

B-15

1       MR. KELLEHER:  Thank you, Your Honor.

2       THE COURT:  All right.  Bring the jury
3   back.

4       (The jury came into the courtroom.)

5       THE COURT:  This room gets a little hot.
6   Mr. Sanchez has also eliminated the bug or wasp that
7   was buzzing around here as well.

8       Go ahead.

9       MR. KELLEHER:  Thank you, Your Honor.

10      Just to reiterate.  The State would submit
11  that the important time to consider is the time from
12  seizure to the time of testing.  As long as you are
13  satisfied that that period of time there were no
14  problems, you can be satisfied that the substance he
15  had on his person was cocaine.

16      There is a separate inquiry from the time
17  of testing until the time it was introduced where
18  there was this issue back in December where it got
19  left out of the room in Dover Police Department.  We
20  are certainly arguing to you that this is the same
21  evidence that was taken from the defendant's person
22  throughout the whole course.

23      Things to look at, and as I mentioned in