IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NATHAN L. GUINN,                )
                                )
          Petitioner,           )
                                )
v.                              )    Civil Action No. 06-3-SLR
                                )
THOMAS L. CARROLL,              )
Warden, and ATTORNEY            )
GENERAL OF THE STATE            )
OF DELAWARE,                    )
                                )
          Respondents.          )


Nathan L. Guinn.  Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware.  Counsel for
respondents.


**MEMORANDUM OPINION**


February 7 , 2007
Wilmington, Delaware

**ROBINSON**, Chief Judge

## I. INTRODUCTION

Presently before the court is petitioner Nathan L. Guinn's ("petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) Petitioner is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As detailed by the Delaware Supreme Court on petitioner's direct appeal, the facts of petitioner's case are as follows.

On the evening of July 27, 2002, probation officer Douglas Watts and City of Dover Police Officer Paul Kuntzi were patrolling as part of the Operation Safe Streets program in Dover, Delaware. While they were driving . . . they observed [petitioner] walking toward their car. Because [petitioner] was out past his probation curfew and was wanted for an outstanding capias, the officers stopped [petitioner] . . . and placed him in handcuffs while they searched him.

During his search of [petitioner's] cargo pants, Officer Kuntzi discovered $424 cash, a piece of suspected crack cocaine, and a small screwdriver. [Petitioner] claimed that the pants he was wearing did not belong to him, but he did not identify the owner of the trousers. [Petitioner] also initially claimed that the $424 of cash belonged to his girlfriend, but he later told the police that the cash belonged to someone else who had been accompanying him while he was walking down the street that evening.

After his detention and search, [petitioner] was taken into custody. Officer Kuntzi placed the drug evidence (the suspected crack cocaine) into an envelope and deposited the envelope in the secured evidence locker at the Dover police station. The substance seized from [petitioner] was later analyzed by a forensic chemist, who determined, in October

1

2002, that the substance consisted of 2.45 grams of crack cocaine. The police also photographed the cash that had been seized from [petitioner], which consisted of one $100 bill, one $50, six $20 bills, and five $10 bills, plus assorted $5 and $1 bills.

After being tested, the cocaine was then returned to the Dover Police Department, and was placed in an envelope that remained in a secure locker until December 16, 2002. At that time, the envelope was removed from the locker, the cocaine was removed from the envelope, and the evidence was examined by [petitioner's] former counsel. After the December 16, 2002 inspection, the drugs were not returned to the evidence envelope. Two days later, however, Robert Neylan, a Dover Police Department technician, located the drugs in the same Dover Police station conference room in which the inspection had occurred two days earlier. The drugs were on the same blue folder in which they had been placed two days before. There was no evidence that the cocaine had been tampered with.

Guinn v. State, 841 A.2d 1239, 1240 (Del. 2004).

A trial was held in December 2002, but the Superior Court granted a defense request for a mistrial on the second day of trial. See Guinn v. State, 882 A.2d 178, 180 (Del. 2005). At the conclusion of petitioner's re-trial in May 2003, a Delaware Superior Court jury convicted petitioner of possession with intent to deliver, possession of cocaine within 300 feet of a church, and possession of drug paraphernalia. The Superior Court sentenced petitioner to an aggregate of thirty-six years in prison, suspended after sixteen years and nine months for probation. Id.

Petitioner filed a motion to reduce or modify his sentence on July 14, 2003, and then he filed a timely notice of appeal. The Delaware Superior Court deferred its ruling on the motion to

2

reduce or modify sentence until after the return of a mandate in petitioner's direct appeal. See State v. Guinn, ID No. 0107003146A, Comm'rs. Rep. & Rec. at 2 (Del. Super. Ct. Dec. 2, 2004).

Petitioner raised the following two claims on appeal: (1) the State failed to meets its burden of authenticating the crack cocaine as evidence because there was a two-day break in the chain of custody; and (2) the trial court abused its discretion by denying petitioner's motion for a judgment of acquittal on the charge of possession with intent to deliver cocaine. Guinn v. State, 841 A.2d 1239, 1240 (Del. 2004). The Delaware Supreme Court affirmed petitioner's conviction and sentence on February 11, 2004, see Guinn v. State, 841 A.2d 1239 (Del. 2004), and the Delaware Superior Court denied petitioner's motion to reduce or modify sentence in April 2004.

Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") asserting the following claims: (1) prosecutorial misconduct during the closing argument; (2) failure to give a jury instruction regarding the prosecutor's improper closing argument; (3) ineffective assistance of counsel for failing to seek a mistrial; (4) ineffective assistance of counsel for failing to subpoena prosecutor Kelleher; (5) ineffective assistance of counsel for failing to seek a continuance of the

3

suppression hearing so that Officer Kuntzi could testify; and (6) ineffective assistance of counsel for failing to conduct any type of investigation or interview potential witnesses. Guinn, ID No. 0207018218, Comm'rs. Rep. & Rec. Dec. 3, 2004, at 4-5. The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. See Guinn v. State, 882 A.2d 178 (Del. 2005).

Petitioner filed the instant application for habeas relief in January 2006. (D.I. 2) The State filed an answer, contending that the court must deny the application. (D.I. 12)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One pre-requisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the

4

state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits.  See Duncan v. Henry, 513 U.S. 364, 365 (1995); Castille v. Peoples, 489 U.S. 346, 351 (1989); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). If the petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris v. Reed, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show that the errors during his trial created more than a possibility of

5

prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a federal habeas claim is exhausted and not procedurally defaulted, and the highest state court adjudicated its merits, then a federal court can only grant habeas relief if the state

6

court's adjudication of the claim:

>    (1) resulted in a decision that was contrary to, or involved
>    an unreasonable application of, clearly established Federal
>    law, as determined by the Supreme Court of the United
>    States; or

>    (2) resulted in a decision that was based on an unreasonable
>    determination of the facts in light of the evidence
>    presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362,

412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  A

state court has adjudicated a claim on the merits for the

purposes of 28 U.S.C. § 2254(d) if the state court "decision

finally resolv[es] the parties' claims, with res judicata effect,

[and] is based on the substance of the claim advanced, rather

than on a procedural, or other ground." Rompilla v. Horn, 355

F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd

on other grounds, 545 U.S. 374 (2005).

On federal habeas review, a district court must presume that

a state court's implicit and explicit determinations of factual

issues are correct.  28 U.S.C. § 2254(e)(1); Campbell v. Vaughn,

209 F.3d 280, 286 (3d Cir. 2000).  This presumption is only

rebutted by clear and convincing evidence to the contrary.  Id.;

Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the

clear and convincing standard in § 2254(e)(1) applies to factual

issues, whereas the unreasonable application standard of §

2254(d)(2) applies to factual decisions).

## IV.  DISCUSSION

Petitioner's application presents the following claims for relief: (1) trial counsel provided ineffective assistance by refusing to interview or subpoena petitioner's brother as a witness because his brother would have testified that the cocaine found on petitioner's person did not belong to petitioner; (2) trial counsel provided ineffective assistance by failing to seek a continuance of the suppression hearing when Officer Kuntzi did not appear to testify; (3) the Superior Court erred by denying the motion to suppress petitioner's statements that were given without Miranda warnings; and (4) the Superior Court erred by admitting the crack cocaine into evidence because the State failed to meet its burden of authenticating the crack due to the two-day break in the chain of custody.

### A.  Ineffective Assistance of Counsel Claims

The Delaware Supreme Court denied petitioner's ineffective assistance of counsel claims as meritless.  Therefore, the court must review claims one and two under § 2254(d)(1) to determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668

8

(1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510 (2003). Under the first Strickland prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. Under the second Strickland prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991); Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

In petitioner's case, the Delaware Supreme Court correctly identified Strickland as the proper standard and analyzed his claims within its framework. Therefore, the State Supreme Court's denial of petitioner's ineffective assistance of counsel claims was not contrary to Strickland. Williams, 529 U.S. at 406

("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). The court will separately review petitioner's two ineffective assistance claims to determine if the Delaware Supreme Court reasonably applied Strickland in denying the claims.

**1. Counsel's failure to interview petitioner's brother**

In his first claim, petitioner contends that counsel provided ineffective assistance by refusing to subpoena and interview his brother, Samuel Ingram, because Ingram would have testified that he owned the cocaine found on petitioner's person. Petitioner asserted this claim in his state post-conviction proceeding, and the Superior Court ordered defense counsel to file an affidavit in response to petitioner's contention. Counsel's affidavit referenced documents provided by petitioner's counsel from his first trial ("former counsel") regarding the results of former counsel's investigation into Ingram's potential testimony. The Superior Court reviewed the documents and denied petitioner's first ineffective assistance of counsel claim as meritless, specifically noting that the file provided by former counsel explained how Ingram had denied any knowledge of the cocaine and how petitioner told former counsel to proceed to trial without Ingram's testimony. See Guinn, ID No. 0107003146A,

10

Comm'rs. Rep. & Rec. at 12-3; see also Guinn, ID No. 0207001821, Order (Del. Super. Ct. Jan. 26, 2005). On post-conviction appeal, the Delaware Supreme Court specifically referenced the file provided by former counsel and affirmed the Superior Court's decision. Guinn, 882 A.2d at 182.

When measuring an attorney's performance, a court must "eliminate the distorting effects of hindsight, . . . reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 688-89. An attorney "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Kimmelman v. Morrison, 477 U.S. 365, 385 (1986). Thus, applying the first prong of the Strickland standard, the court must determine if counsel reasonably relied on former counsel's pre-trial investigation into using Ingram as a potential witness or if, in order to fall within the range of objectively reasonable assistance, counsel should have conducted her own investigation.

The following background facts are pertinent to the court's inquiry. The Superior Court declared petitioner's first trial a mistrial on December 19, 2002. Counsel was substituted for former counsel on January 10, 2003. The file provided to counsel by former counsel contained three items: (1) a report dated September 24, 2002 from an investigator detailing Ingram's

11

version of the events leading to petitioner's arrest; (2) a
subpoena for Ingram to testify on December 17, 2002; and (3) a
memorandum dated December 17, 2002 from former counsel
referencing his interviews with Ingram and petitioner regarding
Ingram's failure to appear at petitioner's trial in December
2002.

The investigator's report recites the following facts
elicited from Ingram: (1) petitioner put on a pair of Ingrams'
shorts and immediately exited the apartment they shared; (2) as
soon as petitioner exited the building, probation and parole
stopped petitioner, searched him, and found crack cocaine in one
of the pockets; (3) Ingram told the probation officer that the
shorts belonged to him, not petitioner; and (4) Ingram had
forgotten that he put the cocaine in the shorts pocket - he was
holding the cocaine for a friend named Demetrice Stratton, who
died prior to the investigator's questioning on September 24,
2002. (D.I. 4, at A-45) Former counsel's memorandum to the file
explains that: (1) Ingram failed to appear for trial on December
17, 2002 because he overslept and lacked transportation to the
courthouse; (2) Ingram admitted loaning the shorts to petitioner,
but denied having any knowledge of the cocaine found in the
shorts; and (3) after being told by former counsel that Ingram
denied having any knowledge of the cocaine, petitioner stated
that he did not want Ingram to testify at his trial. (D.I. 4, at

12

Based on this record, the court concludes that counsel's decision to rely on former counsel's investigation fell within the range of professional assistance required by Strickland. Ingram denied having any knowledge of the cocaine on December 17, 2002, counsel started representing petitioner on January 10, 2003, and petitioner's trial occurred on May 13, 2003. The record contains nothing to suggest that petitioner changed his previous decision to continue to trial without Ingram's testimony, and nothing in the record indicates that Ingram's potential testimony was likely to have changed.[1] In these circumstances, it was reasonable for counsel to conclude that an independent investigation into using Ingram as a witness was unnecessary.

Nevertheless, even if counsel should have conducted her own investigation regarding Ingram's potential testimony, petitioner was not prejudiced by counsel's failure to do so. In order to succeed on an ineffective assistance of counsel claim based on counsel's alleged failure to investigate a potential witness, a petitioner must demonstrate that the witness' testimony would have been favorable and material; mere speculation about a

---

[1]Petitioner has filed two affidavits from Ingram to support his claim that Ingram would have testified that the cocaine belonged to him and not to petitioner. However, the affidavits are dated December 24, 2004 and July 12, 2005, and petitioner's trial ended in May 2003.

13

possible testimony is insufficient to satisfy the prejudice prong of Strickland. See United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989). A petitioner must also demonstrate that the favorable testimony was "forthcoming or available." Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991).

Here, Ingram had already provided two conflicting stories regarding the cocaine before counsel began her representation of petitioner. Because it is impossible to predict which version of the story Ingram would have provided had he testified during petitioner's trial, whether or not Ingram's potential testimony would have been favorable for petitioner is mere speculation.[2] Moreover, petitioner has failed to demonstrate that Ingram was available to testify at his second trial. Petitioner filed an affidavit signed by Ingram stating that he was not aware of petitioner's second trial and that he would have testified if

---

[2]The two affidavits signed by Ingram and provided by petitioner in this proceeding only increase the uncertainty surrounding Ingram's potential testimony. One affidavit from Ingram is dated December 24, 2004, and it states that the cocaine found in the shorts belonged to Ingram but that Ingram forgot to warn petitioner about the cocaine. (D.I. 4, at A-48) The other affidavit from Ingram is dated July 12, 2005, and again admits that the shorts belonged to Ingram, that Ingram owned the cocaine found in the shorts, and that Ingram neglected to tell petitioner about the cocaine in the shorts' pocket. Ingram contends that he lied to petitioner's former counsel on December 17, 2002 when he proclaimed having no knowledge of the cocaine because he was afraid of implicating himself and subjecting himself to possible prosecution. (D.I. 4, at A-49) Ingram's admission that he feared implicating himself if he took the stand even makes it more unlikely that his potential testimony would have been favorable for petitioner.

14

counsel had contacted him.  (D.I. 4, at A-48)  However, because
Ingram failed to appear at petitioner's first trial despite being
subpoenaed, the court finds Ingram's assertion about his
willingness to testify at petitioner's second trial spurious at
best.  Therefore, because petitioner has failed to satisfy either
prong of the Strickland test, the court concludes that the
Delaware Supreme Court's denial of claim one does not warrant
federal habeas relief.

## 2.  Counsel's failure to request a continuance of the suppression hearing

The transcript of petitioner's suppression hearing
establishes the following facts that are relevant to the court's
analysis of petitioner's second ineffective assistance of counsel
claim.  Two officers were present at the time of petitioner's
arrest: Officer Kuntzi and Probation Officer Watts.  After
placing petitioner in handcuffs, Officer Kuntzi searched
petitioner's shorts and removed money and a substance resembling
crack from a pocket.  When Kuntzi removed the money, petitioner
stated that the money belonged to his girlfriend.  When Kuntzi
removed the crack, petitioner stated that the shorts belonged to
somebody else.  (D.I. 4, A-19 to A-25)

Prior to trial, petitioner filed a motion to suppress his
two statements as having been obtained in violation of Miranda.
Only Watts appeared at petitioner's suppression hearing, and he
testified that the sole statement he made to petitioner was an

15

explanation as to why they were taking petitioner into custody, namely, that petitioner was in violation of his probation curfew and there was a capias for him. Watts further testified that Kuntzi did not say anything to petitioner while placing him in handcuffs or while searching petitioner. Watts then described how, upon finding the crack in petitioner's pocket, Kuntzi showed Watts the substance because of its unusual appearance – it was black in color. The two officers then discussed whether the substance was crack. Watts testified that neither of the officers addressed petitioner during this conversation, nor did they "wave" the crack in petitioner's face. Id.

In reviewing petitioner's suppression motion, the Superior Court explained that Miranda warnings "must be given before interrogation when an individual has been taken into custody or otherwise deprived of his freedom in any significant way." (D.I. 4, at A-34). The Superior Court described the two-step analysis required to determine if the admission of a defendant's statements violates Miranda v. Arizona, 384 U.S. 436 (1966): (1) did the defendant make the statements while in custody; and (2) were the statements made spontaneously or in response to police interrogation. After noting that petitioner was clearly in police custody when he made the two statements at issue, and that neither officer directly questioned petitioner, the Superior Court proceeded to analyze whether the conversation between the

16

two officers subjected petitioner to the functional equivalent of questioning for Miranda purposes, as defined in Rhode Island v. Innis, 446 U.S. 291 (1980).  (D.I. 4, at A-35)  Based on Watts' testimony, the Superior Court concluded that the facts did not "support the assertion that the police officer should have known that his question or questions to the probation officer [as to whether the drugs obtained from petitioner's shorts pocket looked like crack] was likely to or reasonably likely to elicit an incriminating response."  Id. at A-37.

Petitioner premises his second ineffective assistance of counsel claim on his belief that, if Kuntzi had been at the suppression hearing, Kuntzi would have admitted to initiating a conversation with petitioner, which would have led to the suppression of petitioner's statements.  Petitioner supports this argument with the testimony Kuntzi provided during the preliminary hearing, namely, that Kuntzi asked petitioner what he was "doing out" and what was "going on."

Petitioner presented the instant claim to the Superior Court in his Rule 61 motion, and the Superior Court denied the claim as meritless because nothing in the record indicated that the outcome of the suppression hearing would have been different had Kuntzi testified.  Guinn, ID No. 0207018218, Comm'rs. Rep. & Rec. at 12)  The Delaware Supreme Court affirmed the Superior Court's decision for the same reason, specifically referring to Kuntzi's

17

testimony in petitioner's August 2002 preliminary hearing.[3]  Id.

By focusing on the fact that the outcome of the suppression hearing would not have been different if Kuntzi had testified, the Delaware state courts denied petitioner's ineffective assistance of counsel claim for failure to demonstrate the requisite prejudice under Strickland.  It is well-settled that a court can address the Strickland prongs in any order, and a court also may properly choose to deny a claim alleging ineffective assistance under only one prong.  See Strickland, 466 U.S. at 697;  Rolan v. Vaughn, 445 F.3d 671, 678(3d Cir.  2006).  Therefore, as an initial matter, the court finds that the Delaware state courts did not unreasonably apply Strickland by denying petitioner's claim under Strickland's prejudice prong without addressing Strickland's performance prong.

Moreover, the court concludes that the Delaware Supreme Court reasonably applied Strickland in denying petitioner's claim.  Petitioner does not argue that his non-Mirandized statements were inadmissible because they were uttered in response to a custodial interrogation.[4]  Rather, petitioner

---

[3][Prosecutor]: Did you question [petitioner]?
[Kuntzi]: Just asked him what he was doing out and what was going on.  I didn't interview him and read him his Miranda rights or anything like that.

Guinn, 882 A.2d at 182 n. 15.

[4]In his reply to the State's answer, petitioner asserts that "whether [Kuntzi's statements constituted] formal questioning or

18

argues that his non-Mirandized statements were inadmissible
because he uttered them while in custody and in response to a
conversation initiated by Kuntzi.  Contrary to petitioner's
belief, the proper inquiry in this situation is whether Kuntzi's
"questions" constituted the functional equivalent of
interrogation, and not whether the "questions" show that Kuntzi
started a conversation with petitioner.  See Innis, 446 U.S. at
300-301 ("Miranda safeguards come into play whenever a person in
custody is subjected to either express questioning or its
functional equivalent.").

When, as here, there is no express interrogation, the issue
is whether the police officer subjected the defendant to the
functional equivalent of express questioning by engaging in a
"practice that the police should know is reasonably likely to
evoke an incriminating response from subject." Innis, 446 U.S.
at 300-301.  "[W]ords or actions . . . normally attendant to
arrest and custody" do not constitute interrogation, id. at 301,
and statements made by a person in custody are admissible if the
statements were voluntarily and freely made without any
compelling influence. Miranda, 384 U.S. at 478.

Viewing the "questions" contained in the preliminary hearing
transcript in context with the fact that Kuntzi knew petitioner
had violated his curfew and that a capias had been issued, at

_____

an interview is not my argument."  (D.I. 17, at 2)

19

most, Kuntzi's questions were more akin to "an informational
inquiry incident to the arrest, as opposed to a query designed to
induce an inculpatory remark." United States v. Conley, 156 F.3d
78, 84 (1st Cir. 1998). Moreover, as in his state collateral
proceeding, petitioner has failed to establish that Kuntzi would
have provided testimony different from the testimony he gave
during the preliminary hearing. Therefore, the court concludes
that the Delaware Supreme Court reasonably determined that
Kuntzi's absence at petitioner's suppression hearing did not
prejudice petitioner. Accordingly, the court will deny
petitioner's second ineffective assistance of counsel claim.

## B. **Miranda** Violation

In claim three, petitioner contends that the Superior Court
erred in denying the motion to suppress his two statements
uttered without Miranda warnings. Petitioner presented this
claim to the Delaware Supreme Court on post-conviction appeal,
thereby exhausting state remedies. However, the Delaware Supreme
Court denied the claim as procedurally defaulted under Delaware
Superior Court Criminal Rule 61(i)(3) because petitioner did not
initially present the claim to the State Supreme Court on direct
appeal. Guinn, 882 A.2d at 182. By applying the procedural bar
of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain
statement" under Harris v. Reed[5] that its decision rested on

---

[5]Harris v. Reed, 489 U.S. 255, 263-4 (1989).

state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. See McCleaf v. Carroll, 416 F. Supp. 2d 283, 296 (D. Del. 2006); Mayfield v. Carroll, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim three absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause for his default by blaming counsel's failure to raise the Miranda claim on direct appeal. (D.I. 17, at 2) Petitioner never presented an ineffective assistance of counsel claim based on counsel's failure to raise a Miranda violation in his state collateral proceeding or in his subsequent post-conviction appeal. Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted, See Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse petitioner's procedural default of the substantive Miranda claim. See Edwards v. Carpenter, 529 U.S. 446, 453-54 (2000).

In the absence of cause, the court does need to address the issue of prejudice. Additionally, the miscarriage of justice exception does not excuse petitioner's procedural default, because he has not provided new, reliable evidence of his actual innocence. Therefore, the court will dismiss claim three as

21

procedurally barred.

## C. State Evidentiary Error

In his final claim, petitioner contends that the State failed to meet its burden of authenticating the crack cocaine due to the two-day break in the chain of custody. It is well-settled that claims based on state court evidentiary errors are not cognizable on federal habeas review unless the petitioner demonstrates that the evidentiary error was so pervasive that he was denied his fundamental right to a fair trial. See Estelle v. McGuire, 502 U.S. 62, 67-8 (1991)(holding that claims asserting a violation of a state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001); Scott v. Jones, 915 F.2d 1188, 1189 (8th Cir. 1990)(chain of custody issue constitutes state evidentiary issue). Here, the Delaware Supreme Court affirmed the Superior Court's admission of the crack cocaine after determining that the State met its burden of authentication. Guinn, 841 A.2d at 1241. On habeas review, the court must accept the Delaware Supreme Court's determination that there was no evidentiary error under Delaware law. See, e.g., Bradshaw v. Richey, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(federal court on habeas review is bound by a state court's interpretation of state law). Thus, claim three poses no constitutional issue for habeas review.

Moreover, even if the Superior Court erred in determining that the break in the chain of custody did not render the cocaine inadmissible, petitioner cannot demonstrate that the error was so pervasive that he was denied a fundamentally fair trial.    In Delaware, evidence can be authenticated by eyewitness identification or by establishing a chain of custody.  See Tricoche v. State, 525 A.2d 151, 152 (Del. 1987).  Because the State in petitioner's case authenticated the evidence by both methods, petitioner cannot demonstrate that the admission of the cocaine under the chain of custody method so prejudiced him that he was denied a fair trial.  Accordingly, the court will deny claim four.

## V.    CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty.  See Third Circuit Local Appellate Rule 22.2.  The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional

23

claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  Slack, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied.  Reasonable jurists would not find this conclusion debatable.  Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

**VI.  CONCLUSION**

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.

24